## Daniel Pierce

*v.*

## The People of the State of Illinois.

1. Confidence game—*obtaining money by note or order.* A note or order given by a defendant, which is signed by himself, does not come within the meaning of the words " false or bogus checks," as used in the Criminal Code, defining the confidence game, as it is genuine. Any one taking either, does so upon the faith of the defendant's signature alone. If they contain forged or fictitious signatures or indorsements, a different question would be presented.

2. Same—*whether money is obtained.* Where a party, after having obtained money and credit, gives his note for the sum due, and afterwards an order for the sum he owed, it can not be said he obtained money or property by the use of the note or order.

3. Same—*obtaining credit upon false representations.* The exhibition of letter heads of a firm with which defendant is connected, business cards, a draft, or copy of one, and the making of a note, payable at a particular bank, and the drawing of an order for money, are means to inspire confidence in the party's ability to pay, precisely as declarations of his credit and standing, and are, at most, but false representations of his solvency, but do not make out a case of confidence game.

4. The language of the statute does not expressly extend to cases of property or money obtained on the belief of the ability and disposition of the defendant to pay, but it contemplates a transaction in which the " means or device," instead of being the cause of the cause, is the direct and proximate cause of obtaining the money or property.

Writ of Error to the Circuit Court of St. Clair county; the Hon. William H. Snyder, Judge, presiding.

Messrs. Kœrner & Turner, for the plaintiff in error.

Mr. Charles P. Knispel, State's Attorney, for the People.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The defendant was indicted and, on trial, convicted, and sentenced to the penitentiary for the term of one year, for obtaining property of one Phillips, " by the confidence game."

Phillips was the proprietor of a hotel in East St. Louis, and on the 4th of August, 1875, the defendant became a guest of his—informing his clerk that he wanted a room for a few days, and other accommodations,—that he wanted his meals at the restaurant, so that he could take what he wanted and pay for it. He represented himself as being of the firm of D. Pierce & Sons, who were merchants doing business on Broadway and Fifth streets, in St. Louis, Mo., and had letter heads and cards with him showing the firm name and place of business; and the hotel clerk swears that, on this representation, and from having seen the letter heads and cards, and observing that he had to write letters once in a while, he gave him one of the best rooms in the house. After the defendant had remained at the hotel some days, the defendant showed the hotel clerk what the latter understood to be a draft on Taylor & Sons, of Newport, Kentucky, for $4000, and informed him that he had funds in the hands of Taylor & Sons, which he had ordered them to forward to St. Louis, and that the draft shown was for the funds. But the clerk says, what was shown him as a draft afterwards turned out to be but a copy of a draft. The defendant remained at the hotel, getting his meals, drinks, etc., and a small amount of money from the clerk, to pay the barber for shaving him, and a boy to go to the post office for his letters, until his bill amounted to some $18, when the clerk demanded payment. The defendant gave his promissory note for $25, payable at the " Bank of St. Louis, Mo., one day after date," saying that he wanted to stay there a few days longer, and would make the note large enough to cover the additional charges. He also observed to the clerk, at the time, that he could give him the note, payable at other banks, but that he had a draft on Sherman & Co. of New York, who had failed, and he did not know whether it would be met, and that he had

funds at the bank at which he made the note payable.  The note was disposed of by the proprietor of the hotel, in St. Louis, for goods; but was finally returned protested.  The defendant had, meanwhile, remained at the hotel, and when notified of the protest of his note, remarked " that it was strange," and that "there ought to be money there in the bank."  He then gave an order on another bank for $50, upon which nothing was received; and upon this failing, he gave an order on his son William for $54.15, which included his account and the costs of protesting his paper.  This was carried to the place indicated as the business place of the defendant's firm, of which his son was represented to be a member, and it was found that it was closed, and that his son was gone and could not be found. The defendant then gave the proprietor of the hotel an order on the Yeager Milling Company for seven barrels of flour, which was not honored, and after this he was arrested.

There was a firm of D. Pierce & Sons, who had been doing business on Broadway and Fifth streets, in St. Louis, Mo., at the place indicated by the defendant, as commission merchants; and there is no reason to doubt but that the defendant was the senior member of that firm.  When it ceased to do business does not appear, any further than that it was closed when the draft was taken there which had been drawn by the defendant on his son William.  The firm had, also, had transactions with the Yeager Milling Company, but that company gave as a reason for refusing to honor the draft for the seven barrels of flour, that D. Pierce & Sons owed them $350, and they had taken their goods out of their store, and they would still be losers by at least $200.

As to the genuineness of the draft on Taylor & Sons, of Newport, Ky., or the other matters represented by the defendant, there is no evidence, except that of defendant, which, if entitled to credit, exonerates him from falsehood in that respect.

The only question is, do these facts make a case under the 98th section of the Criminal Code, entitled " confidence game," (R. S. 1874, p. 366)?

That the defendant acted fraudulently, may be conceded; but every fraud is not a " confidence game," within the meaning of the statute.    The language of the statute is:    " Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property, by means of the use of any false or bogus checks, or by any other means or device commonly called the confidence game, shall be imprisoned in the penitentiary not less than one year nor more than ten years."

The position that the note and orders given by the defendant, come within the meaning of the words " false or bogus checks," as used in this section, can not be maintained.    Had they contained forged or fictitious indorsements, there would be reason for calling them false or bogus; but they contained no indorsements whatever, and it is not disputed the defendant's signature to them was genuine.    Any one taking them, therefore, would necessarily do so upon the faith of the defendant's signature alone, and of however little value they were, this was solely because of the defendant's insolvency, and not because of any false or bogus character of the instruments.    Nor can it be said money or property was obtained by the use of the note or orders. Money and property were obtained by the defendant, on the belief, which he had inspired, of his ability and disposition to pay, and the note and orders were given by him, and received by the party from whom the money and property were obtained, as an evidence of the indebtedness, and when and how it was agreed to be paid, and nothing more.

The whole case, in our opinion, is narrowed down to this: is obtaining credit, by false representations, in regard to the party's solvency, within the contemplation of the statute? The exhibition of the letter heads, business cards, draft, or copy of draft, and the making of the note, payable at a particular bank, as well as the drawing of the orders on the different firms, were intended to inspire belief of the defendant's ability to pay, precisely as were his oral declarations.    They were, at most, but false representations, designedly made, of his solvency, for the purpose of obtaining credit.    Their only

effect was to inspire confidence in his financial integrity, and the money and property he obtained were given him, not simply because of these documents or representations, for there was no exchanging of the one for the other, but because of this confidence he had inspired.

The language of the statute does not expressly extend to cases of money or property, obtained on the belief of the ability and disposition of the party to thereafter make payment; but it contemplates a transaction in which the " means or device," instead of being the cause of the cause, is the direct or proximate cause of obtaining the money or property; and, being a highly penal statute, we are not authorized to extend its meaning by implication.

Any doubt which we might otherwise have entertained, as to the correctness of this construction, is excluded by reference to other legislation on the same subject. By the 152d section of the Criminal Code, as revised in 1845 (Rev. Stat. 1845. p. 178), it was enacted, " If any person, by false representations of his own respectability, wealth, or mercantile correspondence and connections, shall obtain a credit thereby, defraud any person or persons of money, goods, chattels or any valuable thing, or if any person shall cause or procure others to report falsely of his honesty, wealth or mercantile character, and by thus imposing upon any person or persons, obtain credit, and thereby fraudulently get into possession of goods, wares or merchandise, or any valuable thing, every such offender shall be deemed a swindler, and, on conviction, shall be sentenced to return the property so fraudulently obtained, if it can be done, and shall be fined not exceeding $1000, and imprisoned not exceeding six months."

In consequence of abuses, as was supposed, resulting from prosecutions under this section, the General Assembly, in 1857, enacted that it should only apply to representations " which shall have been reduced to writing and signed by the party to be charged thereby, prior to obtaining such credit." Laws of 1857, p. 103, § 2. And in the revision of 1874, the main features of the section, as thus amended, are retained, with

the addition to the penalty of allowing the fine to be $2000, instead of $1000, and the confinement in the county jail one year, instead of six months. See Revised Laws of 1874, p. 366, § 97.

In our opinion, if any part of the Criminal Code has been violated by the defendant, it is this, and not the section relating to the confidence game.

The judgment is reversed, and the defendant discharged.

*Judgment reversed.*