[No. 7526]

## ELLIOTT v. THE PEOPLE.

1. CRIMINAL LAW—*Confidence Game—Defined*—The offense of obtaining money by a confidence game, denounced by Rev. Stat. sec. 1783 cannot well be so defined as to cover all possible fraudulent devices. Generally speaking, it is, a swindling operation, advantage being taken of the confidence reposed by the victim in the swindler. It includes all swindles perpetrated by any false and deceitful practice gaining the confidence of the one defrauded, e. g. maintaining an office furnished in a manner to convey the idea that a prosperous and profitable business is there carried on, and by false representations to the same effect inducing the payment of money for an interest in the supposed business, which in fact has no existence.

2. ——*Evidence—Other Like Crimes*—Where the intent of the act charged is material, other transactions of a similar nature, so connected as to time, and so similar in other relations, that the same motive may reasonably be imputed to all, may be shown.

A transaction subsequent in time to that in question may be shown, where the other conditions essential to its admissibility exists.

3. ——*Instructions*, to which the accused made no timely objection cannot be assigned for error.

4. ——*Harmless Error*—The denial of a continuance applied for on account of the absence of material witnesses, is harmless, where upon the trial the accused calls other witnesses who depose to, substantially, the same facts proposed to be shown by the absent witness.

So, the improper admission of evidence which in no manner reflects upon the integrity of the accused.

*Error to Denver District Court.*—Hon. CARLTON M. BLISS, Judge.

Mr. ISHAM R. HOWZE and Mr. JOHN A. DEWEESE, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, Attorney General, and Mr. CHARLES O'CONNOR, First Assistant Attorney General, for The People.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error, whom we shall hereafter designate defendant, was convicted under the provisions of sec. 1783, Rev. St. 1908, defining the offense confidence game, which is as follows:

"Every person who shall obtain, or attempt to obtain, from any other person or persons any money or property by means of or by the use of brace faro, or any false or bogus checks, or by any other means, instrument or device, commonly called confidence games, shall be liable to indictment, and on conviction shall be punished by imprisonment in the penitentiary for any term not less than one year nor more than ten years."

The sufficiency of the evidence to sustain the conviction is challenged.

The substance of the testimony relative to the commission of the offense charged is that the prosecuting witness saw the following advertisement in a Denver paper: "Wanted—A man to take half interest in fine office business; will pay $100.00 a month; $250.00 gets half interest; call 310 Century Building"; that witness called at the address named, where he found defendant occupying an office equipped with telephone, desks, carpet and chairs, and informed him that he had called in answer to this advertisement; that defendant informed the witness he was doing a good real estate business; that he had resided in Denver and been engaged in that business for about eighteen years; that his partner, McDonald, owned a half interest in the business, which he desired to sell on account of illness; that in the event his partner did not sell within a few days he would buy the interest himself, but would rather have a partner for the reason that the business was such that it required two to take care of it properly; that defendant gave him McDonald's address; that he went to this address, and left a card requesting McDonald to meet him at defendant's office;

that later he met McDonald at this office; that he bought McDonald's half interest, paying therefore, to McDonald, $150.00 in cash, and gave his note for $100.00, payable to defendant, which was delivered to the latter, who then gave McDonald his personal check for $100.00, thus completing the transaction. He further testified that he and defendant entered into a co-partnership agreement, which relation continued for about two months; that the business did not pay anything, and that the office did not have any clientage at all; that he became dissatisfied and finally sold out to defendant for $150.00, the defendant giving in payment two notes of $75.00 each, which have never been paid. It appears that defendant, according to his letter heads, was conducting a business at the address named in the advertisement under the name of the "Iowa Land & Investment Co."

We think this testimony is sufficient to establish the offense for which defendant was convicted. Our statutes provide that the act relating to confidence games, "shall be liberally construed for the detection and punishment of offenders" against its provisions. Sec. 1785. "Confidence game" can hardly be defined in a manner which would cover all cases, for the reason that schemes, the purposes of which is to swindle others, are, as has been frequently stated, "As various as the mind of man is suggestive." Generally speaking, it is a swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler. The offense intended to be covered by the statute is obtaining money by means or use of that which is false or bogus. *Wheeler v. People,* 49 Colo. 402, 113 Pac. 312, Ann. Cas. 1912A, 755; *Powers v. People,* 53 Colo. 43, 123 Pac. 642.

Here we have an advertisement, which on its face offered an opportunity to secure very considerable returns from a comparatively small investment, so

worded as to readily attract the attention of the unso-
phisticated. The prosecuting witness, in response to this
advertisement, called at the address named, where he
found the defendant occupying an office, fitted up in a
manner calculated to impress him that its occupant was
doing a prosperous business, and was informed by him
that he was doing a good real estate business, had been
engaged in that business in the city for something like
eighteen years, and that he had a partner who wanted
to sell his interest. The defendant furnished the address
of the partner. Negotiations were entered into and the
witness purchased an interest in an alleged business,
which from the testimony for the people was worthless,
or did not in fact exist. All this was accomplished, not
by mere words alone, but in addition the instrumentality
of an office furnished in a manner which would lead the
witness to believe that the representations of the defend-
ant, with respect to the business which he had for sale,
were true. The office and fixtures were genuine, but by
their means and the representations of defendant, the
confidence of the witness was secured and his money
obtained for that which was a myth. In other words, by
the means indicated, the victim was led to believe that a
business was valuable, which in fact did not exist. In
the circumstances of this case, the fraud and deceit thus
practiced, whereby the witness was defrauded, although
on its face the transaction was made to assume a legiti-
mate one, constitute the offense with which the defendant
was charged. Such an offense is not limited to obtaining
money by means of brace faro, loaded dice, marked cards,
or false or bogus checks, but includes all swindles perpe-
trated by any device which is deceitful and illegitimately
used to gain the confidence of the person thereby
defrauded.

The serious question in the case relates to the admis-
sion of testimony. Over the objection of the defendant,

evidence of other transactions of a similar nature to the one which was the basis of the offense, for which the defendant was on trial, was admitted. From the evidence bearing on these transactions, it appears that other parties had been defrauded by defendant, by the same general plan employed in defrauding the prosecuting witness. These transactions occurred a few weeks before and after the one under consideration. The general rule is, that a defendant on trial for a crime shall not be prejudiced in the eyes of the jury by the admission of testimony tending to prove that he is guilty of another and distinct crime. This rule should be carefully observed by trial courts and district attorneys, in all cases where applicable. If, however, evidence is relevant to a material fact in issue in the case on trial, no valid reason exists for its exclusion, because it may prove, or tend to prove, that the accused committed some other crime. Underhill, Crim. Evidence, § 90; *People v. Argentos,* 156 Cal. 720, 106 Pac. 65; *People v. Walters,* 98 Cal. 138, 32 Pac. 864; *People v. Shea,* 147 N. Y. 78, 41 N. E. 505; *State v. Franklin,* 69 Kan. 588, 77 Pac. 588; *Jaynes v. People,* 44 Colo. 535, 99 Pac. 325, 16 Ann. Cas. 787; *Warford v. People,* 43 Colo. 107, 96 Pac. 556.

The authorities are quite uniform to the effect that when the guilt of a defendant depends upon the intent, purpose or design, with which an act was done, other transactions of a similar nature on his part may be examined into, for the purpose of establishing such guilty intent, design, or purpose; although the facts thus elicited show the commission of another crime, provided such extraneous transactions are so connected as to time and so similar in their other relations that the same motive may be reasonably imputed to them all. *Housh v. People,* 24 Colo. 262, 50 Pac. 1036; *Clarke v. People,* 53 Colo. 214, 125 Pac. 113; *State v. Jones,* 171 Mo. 401, 71

S. W. 680, 94 Am. St. Rep. 786; *Wallace v. State,* 41 Fla. 547, 26 South. 713.

In the case at bar, one of the material facts in issue, was whether the defendant was engaged in a legitimate real estate business, at the address named in the advertisement, or was this a subterfuge employed to defraud, by selling an interest in a business which did not exist. Advertising that an interest in an office business, which would pay $100.00 a month, could be secured for $250.00, is not an offense; neither is it criminal to place a sign upon a door indicating that the concern occupying the room, into which it leads, is the "Iowa Land & Investment Co."; nor is it an offense to equip such room with desks, carpet, chairs, and a telephone; but when it is charged that this means is resorted to for the purpose of deceiving and inducing persons to believe that the occupant is engaged in a legitimate and prosperous business, which in fact has no existence, it becomes necessary to ascertain the intent, design, or purpose of the party charged with defrauding another by this means.

Was it the intention, design, and purpose of the defendant, in connection with his representation respecting his business, to lead the prosecuting witness to believe, that he, the defendant, by reason of the character of his office equipment, was doing a good real estate business? We think, for the purpose of determining this question, it was competent for the people to show transactions with other parties which tended to establish a fraudulent scheme to cheat, and defraud by physical devices similar to those employed to deceive and defraud the prosecuting witness, when, as pointed out, such dealings are sufficiently connected in point of time to authorize the inference that the transaction under consideration was in pursuance of the same general purpose.

Counsel for defendant, however, insist that evidence of subsequent transactions was not admissible. On this subject the authorities are not harmonious. Underhill on Criminal Evidence, sec. 88, states in effect that it is immaterial, where the evidence of another crime is offered to show guilty intent, that such crime was committed after the crime for which the accused is on trial; provided, of course, that the other essential conditions exist with respect to that character of testimony to which we have referred. The author cites numerous authorities sustaining his view.

There was some testimony regarding contracts between other parties, which perhaps was not admissible, but it appears, so far as advised from the record, that as these matters did not in any manner reflect upon the integrity of the defendant, they could not have prejudiced his case.

At the close of the evidence on the part of the people, the defendant moved for a directed verdict, for the reason that there was no direct evidence to sustain the allegations of the information. This we think was properly denied. Without going into details, we are of the opinion there was sufficient evidence from which the jury might infer that in fact McDonald did not have an interest in the business which the defendant purported to sell, and that the latter received the money, or the major part thereof, of which the prosecuting witness was defrauded. Parties committing frauds usually seek to conceal direct and positive evidence of their guilt, and hence, to establish fraud resort must generally be had to circumstantial evidence.

It is claimed that some of the instructions given do not correctly state the law applicable to the case. These instructions were given to the jury without any objection on the part of the defendant.

Error is also assigned upon the refusal of the court to grant a continuance. This application was based upon the absence of witnesses, who would testify to facts material to the defense. Whether or not the showing made in support of this application was sufficient is not involved. It appears from the record that at the trial the defendant called witnesses in his behalf, who testified substantially to the same facts, which it was claimed the witnesses named in the application would testify to.

The judgment of the district court is affirmed.

*Judgment affirmed.*

Decision *en banc.*

CHIEF JUSTICE MUSSER, Mr. JUSTICE SCOTT, and Mr. JUSTICE GARRIGUES dissenting.

Decided November 3, A. D. 1913. Rehearing denied February 2, A. D. 1914.