No. 11,287.

ROLL *v.* THE PEOPLE.

Decided February 1, 1926.

Plaintiff in error was convicted of obtaining property by means of a confidence game.

*Affirmed.*

1.  CRIMINAL LAW—*Confidence Game—Bank Check.* A bank check backed by a bank account to cover it, and which is actually cashed, is "property" as that word is used in chapter 93, S. L. '23, relating to confidence games.

2.  *Confidence Game—Representations.* In a prosecution for obtaining property by a confidence game, the contention of defendant that because the property in question, a bank check, was obtained by mere verbal representations, there was no offense under the statute, overruled.

3.   *Confidence Game—Intent—Evidence.*   Evidence of intent, design, and purpose may be material in a confidence game prosecution, and was material in the instant case.

4.   *Confidence Game—Evidence—Similar Transactions.*   In a prosecution for obtaining property by means of a confidence game, evidence of other similar transactions was properly admitted to prove intent, motive or design, and the contention of defendant that the transactions were not similar, is overruled.

5.   WITNESSES—*Former Conviction—Cross-examination.*   On the question of impeachment of a witness by showing a former conviction, considerable latitude is allowed the cross-examiner, and the scope of the examination rests in the sound discretion of the trial court.

6.   *Former Conviction—Pardon.*   On the question of impeachment of a witness by showing a former conviction, it is the guilt, and not the formal sentence, that weakens his credibility, and impeachment by proof of a former conviction is not affected by pardon.

7.   INSTRUCTIONS—*Requests.*   Requested instructions are properly refused where they are fully covered by instructions given by the court.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Sackmann, Judge.*

Mr. C. A. IRWIN, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. JEAN S. BREITENSTEIN, Assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was sentenced to the penitentiary for five to seven years on a verdict of guilty of obtaining property by means of a confidence game. To review that judgment he sues out this writ and in support of it contends:   (1) The thing

obtained by the acts charged and relied upon was not property; (2) it was not obtained by a confidence game; (3) evidence of other transactions was improperly admitted; (4) error was committed in the cross-examination of defendant; (5) certain instructions requested by defendant were erroneously refused.

The statute, chapter 93, L. 1923, p. 253, makes it a felony to obtain "any money or property by means of or by use of brace faro, or any false or bogus checks, or by any other means, instrument or device, commonly called confidence games." The information charged that defendant and another obtained from one Brubeck "one certain bank check of the value of seven thousand dollars,   *   *   *   by means and by use of the confidence game."

Defendant, Brubeck, and one Davis, were members of, and co-workers in, the same church, and he professed the greatest admiration for, and confidence in, each of them. Defendant's principal business seems to have been that of a promoter and speculator in anything offering tempting profits. This record begins with an alleged million dollar snap into which he admitted his two friends. Brubeck put up $100 cash and when "the deal fell through" this was returned to him. Defendant next told Brubeck how he had made much easy money for Davis, and proceeded to unfold, and let him into, an oil leasing scheme, to the extent of $300. A little later the operation broadened until some 700 acres were covered by options and Brubeck had borrowed $2,500 and added that to his investment. A prospective purchaser now became necessary. He appeared in the person of one McGinnis, a tool of defendant, and himself probably innocent of fraudulent intent. With $1,000 furnished by defendant, he took an option on said 700 acres at $100 per acre and pretended eagerness to swell this to 1,000 acres. This payment was turned over to Brubeck. Defendant next claimed to have found, at $10,000, other oil land which could be added to their holdings and all sold at an enormous profit to a mythical friend of his, but which tract required an addi-

tional $7,000 to swing. Defendant and Brubeck being together, a woman, representing herself as Mrs. Roll, called over the telephone and talked with each. She read an imaginary telegram from her husband's friend offering $100 per acre for "all the land you got." Relying upon all this conjuring as actuality, Brubeck, at defendant's instigation, borrowed an additional $6,000, on which, plus the $1,000 he had received from McGinnis, he wrote and delivered to defendant his check for $7,000, which check defendant cashed. This is the property mentioned in the information. There was no prospective purchaser, no sale, no telegram as represented. Aside from the trickery involved in words the means used to wheedle this money out of Brubeck included the telephone, the telegraph, written checks, written options and contracts, the $1,000 cash, and the dummy McGinnis.

1. "For the payee named in a check to induce another to sign and deliver it," says counsel for defendant, "is not within the confidence game statute." The basis of this assertion is the contention that the check in question was not property in the hands of Brubeck, hence obtaining it by false pretenses would be no crime, and that the same rule applies to the charge and statute before us. This position counsel supports by the citation of the earliest English statutes and decisions and the history and development of that law down to the present time in the several states of the Union. An ingenuous fabric is thus constructed which rests primarily on the definition of property, in prosecutions for larceny under the common law, which did not include written instruments. That definition has been supplanted by our statute which includes in the phrase "personal property" everything which may be the subject of ownership and is "not included within the term, real estate." The contention here made, by counsel for defendant is exactly the same as made by him with equal skill and research in *Knepper v. People*, 63 Colo. 396, 167 Pac. 779, where the false pretense statute was in question. He now admits that notes and checks are cov-

ered by that statute under the phrase "other valuable thing whatever." But in the Knepper case we cited with approval, *Clawson v. State,* 129 Wis. 650, 109 N. W. 78, 116 Am. St. 972, 9 Ann. Cas. 966, holding that a promissory note was covered by a statute making it a criminal offense to obtain, by false pretenses, "money, goods, wares, merchandise or other property." In that case it appears the real difficulty encountered by the Supreme Court of Wisconsin was due to the word "other." Here the language is "or property," not "other property." Our own statute and decision settle the question in this jurisdiction. Much musty learning is thus made superfluous, and we need not delve into it. Fortunately so, for in this commercial age a solemn judicial decision that a check for $7,000, backed by a bank account to cover it, and actually cashed by the payee, is not property, would require neither argument nor precedent to make it ridiculous.

2. It is next contended that this check was obtained merely by verbal misrepresentations which, under the rule in *Wheeler v. People,* 49 Colo. 402, 113 Pac. 312, constitutes no offense under the confidence game statute; or that at most it was obtained by oral representations relied upon by Brubeck because of the deal with McGinnis, and hence the McGinnis contract was not the device used for obtaining the check and not the direct or proximate cause thereof, but the cause of the cause, and therefore the evidence is insufficient under *Pierce v. People,* 81 Ill. 98. The argument is specious. So intricate and interwoven are the falsehoods, the fictitious deals and the fraudulent writings involved in this transaction that no man can put his finger on a single one of them and say with any certainty, this it was that induced Brubeck to part with his property. No witness pretended to do so. It is perfectly obvious that they were each a part of a single transaction, spread over a considerable period and numerous localities, each leading toward, and essential to, the culmination of the swindle. There were devices in plenty and false representations at

every turn, no one of which was the cause of a cause but each a portion of the complete whole.

3. To prove intent, motive and design, and limited to that and "no other purpose" by a special instruction, evidence was admitted of a transaction, or series of transactions, between defendant and said Davis. Defendant insists there was no question of intent here involved, that the transaction was not similar and the ruling was erroneous. If so the evidence was certainly prejudicial.

Evidence of intent, design and purpose may be material in a confidence game prosecution. *Elliott v. People*, 56 Colo. 236, 138 Pac. 39. It was exceptionally so here. The use of the contracts and checks was undisputed. The intent of that use was the very heart of the dispute. On that point, and the design or plan with which they were used, the evidence was conflicting. If used in good faith, with the design to forward a legitimate business transaction, they were innocent; if with intent to defraud, and designed to delude and deceive, they were criminal. Evidence that defendant had used the same means, at no distant date, in dealing with another, with intent and design to deceive and defraud that other, and by identical devices had obtained property from his former victim, would be most persuasive proof of the intent and design with which the same means were used in the instant case, and would be clearly admissible under the general rule. Were the transactions similar? The relations between defendant and Davis were exactly the relations between defendant and Brubeck. The transactions with Davis extended from October, 1923 to December, 1924; those with Brubeck from August, 1924, to December, 1924. During the period covered by both defendant continued in the same business. The alleged deals between defendant and Davis involved real estate, or options thereon, or "units" therein. Oil wells and gold mines figured in them and defendant's representations of value ran far into the millions.

In this nefarious business defendant used half a dozen

men as his tools, just as he used McGinnis. They all testified for the prosecution herein, reciting the various roles assigned them by defendant and played according to his instructions. In dealing with Davis, as with Brubeck, there were bogus writings, money with a string to it, pretended agencies, fake telegrams, and telephone conversations which defendant pretended he was carrying on with certain captains of finance in distant sections of the country, but which in reality never passed beyond his own men on local lines in the city of Denver. All this was shown to have been with the same purpose, intent and effect as charged in the instant case. Davis was relieved of some $23,000. That fraud, it is true, was more flagrant, its conception more daring, its ramifications more complicated, its period of incubation longer. But the difference is one of size only; otherwise the similarity is that of a horse to a colt.

4. Defendant testified in his own behalf. He was asked on cross-examination if he had been convicted of manslaughter in Kentucky. This he denied. Questions as to his indictment were ruled out. Again asked if, at a certain term of court in a certain county, he had not been convicted and sentenced, he quibbled and equivocated. A purported copy of the court record was then exhibited to him and he finally admitted that a verdict of guilty, including a sentence of two years in the penitentiary, had been then and there returned against him and volunteered the information that he had been pardoned the next day by the governor. Said record was not introduced in evidence. It is now urged that this cross-examination was unfair and prejudicial and that no judgment having been pronounced on the Kentucky verdict it was inadmissible to impeach. On the first of these contentions the law is otherwise. A considerable latitude is, under the circumstances, allowed the cross-examiner, and the scope of it rests in the sound discretion of the trial court. *Dennison v. People*, 65 Colo. 15, 174 Pac. 595; *Davis v. People*, 77 Colo. 546, 238 Pac. 25; *Tollifson v. People*, 49 Colo. 219, 232, 112 Pac. 794; *LeMaster v. People*, 54 Colo. 416, 422, 131 Pac. 269.

Why sentence should have been fixed in the verdict, and the force thereof under the law of Kentucky, is not disclosed by this record, and whether the facts constitute such a conviction as may be shown for the purpose of impeachment we need not determine. No case dealing with the subject, where the executive has rushed in between verdict and sentence, has been called to our attention. Reason would seem to support the position that one who solicits and accepts executive clemency at that moment thereby admits his guilt and the regularity of the proceedings by which it has been established. It is, after all, guilt, not formal sentence, which weakens his credibility. The rule which precludes proof of that fact is but a rule of convenience and necessity to obviate the trial of collateral issues. It limits evidence of the fact to evidence of conviction; the presumption being that until judgment the proof may fail. But if, in the instant case, error was committed in this particular it was cured by defendant. Impeachment by proof of conviction is not affected by pardon. 40 Cyc. 2612.

Apparently on the theory that the law was otherwise defendant himself put in evidence the alleged pardon. That document recites the fact of his conviction and sentence as its basis and having so accepted it and himself introduced it he is bound thereby.

5. Defendant's requested instructions 3, 4 and 10 were properly refused because fully covered by the court's instruction 16. The substance of each was that no conviction could be had if the transaction in question was in good faith though defendant later misapplied or appropriated the check.

Defendant's requested instructions 1 and 2 confine "confidence game" to a deception by means of a device as distinguished from words, while under the court's instruction 5 it may consist of a combination of the two. We have disposed of this question in paragraph 2, *supra*. The defendant's instructions were erroneous, that of the court correct.

The maximum penalty provided by statute for the offense is twenty years. Defendant was ably represented below and his cause has been presented here with skill and infinite care and industry. We think the jury could not have found otherwise and the trial court was most considerate. There is no reversible error in this record.

The judgment is affirmed.