# No. 14,774.

## PEIFFER *v.* THE PEOPLE.
(107 P. [2d] 799)

Decided November 4, 1940.   Rehearing denied November 25, 1940.

Mr. JOHN F. MUELLER, Mr. ROBERT H. CLOSE, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, for the people.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was convicted of confidence game on the first count of an information and obtaining property by false pretenses on the second. On the first he received a sentence of ten to twenty years and on the second nine to ten years, sentences to run concurrently. To review that judgment he prosecutes this writ.

The seven assignments may be thus summarized: 1. Error in the admission of evidence; 2. error in the rejection of evidence; 3. error in refusing certain instructions; 4. error in giving instruction No. 7.

A brief statement of facts is essential to an understanding of our conclusions.

The charges were that defendant obtained twenty-four shares of stock of the value of $500.00 from Mrs. Fannie R. Russell and her daughter Mrs. Lucy Lee Boland by means of a confidence game; and that he obtained said shares by falsely pretending that The United Sales Service Company, which he represented, was a reputable business concern with offices in room No. 234 in the Wilda building at 1425 Welton street, Denver, and that he intended to see that Mrs. Russell and Mrs. Boland were paid $500.00 for said stock within sixty days, or have it returned. From the evidence the jury was entitled to believe the following:

Early in August, 1939, defendant made two visits to the home of Mrs. Russell and her daughter, and on the second obtained from them an assignment of said stock. In exchange he gave them Exhibit A, a so-called "note," bearing the printed heading, "United Sales Service Co." with the address, "234 Wilda Bldg., 1425 Welton St., Denver, Colo.," so signed by that company in printing, "By L. V. Peiffer" in pencil. Penciled in the upper right hand corner thereof is "1358 Emerson Ma. 9951." A very light diagonal pencil line appears across the first mentioned printed address. The body of the exhibit, in print, recites that in consideration of the receipt of the stock the company agrees to pay $500.00 for it or return it within sixty days, or "an identical amount of the same properties." It closes with this cryptic statement, "It is agreed and understood United Sales Service Co. is in this transaction a principal party hereto in credit and not an agent in any respect to the party of the second part." No other reference appears therein to parties of any "part." Defendant exhibited to Mrs. Russell and her daughter a list of names of other persons from whom he claimed similar purchases and said he represented said sales company and that it was located as above.

Alarmed by rumor, the women went within a few days to the Wilda Building and learned that neither defendant nor said company had offices there. Later in the month, in response to repeated phone calls at his residence, he came again to the residence of Mrs. Russell and told her he was having trouble with the building and loan commissioner who was holding up a pending deal for the sale of the stock. The stock was neither returned nor paid for. Defendant had similar deals with the same result with the following named persons, as they testified: With Johnson in February, 1938; with Cody and Williams in June, 1939; with Haxton in July, 1939; and with Miller in September, 1939. Defendant rented said room 234, furnished, from No-

vember 3 to December 1, 1937, for $18.00, on which $10.00 only was ever paid. The agent of the building never heard of the company and never saw defendant save at the time of the rental. Prior to the filing of the information the defendant had a conversation with one of the witnesses in which he stated that this company was his own business, the "specialty business"; that he was then operating at 13th and Emerson streets; that he had been located in the Wilda building for about · a month; that he was not dealing in stocks and securities; that he had obtained the stock in question which was worth $8.00 to $11.00 per share and sold it for $250.00; and, when asked why he had promised to pay $500.00 for it, answered, "I guess that is an expensive way of borrowing money." Most of the stock obtained from the witnesses above mentioned, including that mentioned in the charge, was sold by defendant to a Denver stock and bond house.

When the state closed, defendant moved for a directed verdict on both counts; as to the first because of failure of essential proof; as to the second no specific reason was stated. The motion was overruled. Certain writings were then offered by defendant, some admitted and some rejected. The bookkeeper of a Denver bank testified that an account was opened with his bank March 23, 1938, under the title, "United Sales & Service Co., Trust Fund Acc.," on which defendant only was authorized to draw, and which account was closed September 1, 1938. Through this witness evidence of certain cancelled checks, Exhibit 5, was offered and rejected. Defendant, who did not take the stand, then rested.

Defendant's argument does not follow his assignments as above summarized. Instead so much of it as deserves notice is presented under the following heads: 1. There is no evidence to support the charge of confidence game; 2. there is no evidence to support the charge of false pretenses; 3. evidence of similar transactions were erroneously admitted; 4. the refusal of defendant's instruc-

tion No. 3; 5. the refusal of defendant's instruction No. 5. Since the attorney general answers the argument as thus outlined we waive any question of its being covered by the assignments and address ourselves to it.

1. This contention rests upon the claim that there is no evidence that a false or bogus token of any kind was used and that such evidence is indispensable. True, some agreement seems to have been entered into concerning the terms of the transaction before the production by defendant of Exhibit A, but that it was finally consummated by such exhibit can not be doubted. In the light of facts developed this exhibit meets the full requirements of the statute. It is a "bogus" "instrument or device" well calculated to impose upon the unskilled and unwary. '35 C.S.A., c. 48, §222. So peculiar, numerous and diversified are the schemes employed to swindle victims that no statute can specifically cover them, and no accurate definition including all can be framed by the courts. *Powers v. People,* 53 Colo. 43, 123 Pac. 642; *Elliott v. People,* 56 Colo. 236, 138 Pac. 39. Another case decided by this court is particularly applicable. Therein a contract played a part similar to that of the "note" in the instant case. *Roll v. People,* 78 Colo. 589, 243 Pac. 641. The solemnity and apparent dignity and regularity of the printed form of Exhibit A, the flaunted address carrying the impression of a substantial business location, the printed signature of the company as of something important, and that in pencil by the defendant, as some minor representative, all stamp it as the very kind of device intended by the statute. As trusting as Mrs. Russell and Mrs. Boland appear to have been, it is incredible that they would have parted with their property had defendant frankly said, "I am the United Sales Service Company. I never was in the Wilda Building but for a few days. This contract depends for its validity solely upon my own integrity and financial standing." The idea is preposterous.

2. This contention rests upon the assertion that

the only false pretenses alleged were the representation that the company was a dependable business concern and that it was located in the Wilda Building. Counsel say there is no evidence of the first and that as to the second the evidence was to the contrary. We think the whole course of defendant's admitted statements, plus his peculiar use of Exhibit A, was intended to be, and was, a representation that this so-called company was a responsible business concern. As to the address in the Wilda Building, the alleged obliteration of it is a mere hair line having the appearance of an accidental slip of the pencil. No one would take it for an intended erasure. The penciled address in the upper right hand corner has the appearance of a simple memorandum. There is nothing to indicate that it was intended as a new address of the alleged company. It was represented by defendant at the time as his home address, and such it turned out to be. That Mrs. Russell so believed is demonstrated by her conduct, for when aroused by Dame Rumor to her possible peril she went at once to the Wilda Building. Furthermore defendant falsified as to his plan and purpose. He told these women that his scheme was to dispose of the stock by "blocking" it with that purchased from others and thus obtain a greatly increased price, and failing this to return it. These were not even promises of future action, they were representations of present plans, and they were false when made, for the entire evidence forces the conclusion that his then present scheme was to appropriate the stock to his own use and his present method of business was a plain swindle. The evidence was ample to support the charge of false pretenses. *Clark v. People,* 53 Colo. 214, 125 Pac. 113; *Miller v. People,* 22 Colo. 530, 45 Pac. 408. The foregoing also disposes of the complaint made of the giving of the court's instruction No. 7. 25 C.J., p. 594, §15.

3. This contention rests upon the theory that there was no sufficient evidence to support the charges. That theory has been disposed of above. These "similar

transactions" were on all fours with those set forth in the information, and evidence thereof was properly limited by the usual instruction. That they were admissible to prove intent is too well established to require citation. Were it otherwise one would suffice. *Clark v. People,* 105 Colo. 335, 338, 97 P. (2d) 440.

■ 4. Defendant's tendered instruction No. 3, refused, advised the jury that any person may transact business "under a trade name of his own choosing." It might have been given, but since no contrary contention was made and the proposition is one so generally known and accepted it is not conceivable that failure to so instruct prejudiced defendant.

■ 5. Defendant's tendered instruction No. 5, refused, simply limited the jury to the exact charge contained in the information. It was superfluous. Other instructions stated the charges with particularity and advised the jury that these must be proved "as alleged." Nothing more was necessary.

Defendant has no cause of complaint. He not only committed the specific offenses forbidden by the statute and charged in the information, but was engaged in the business of committing such offenses. He had a fair trial and the record discloses no prejudicial error.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE KNOUS concur.

MR. JUSTICE KNOUS concurring.

Although I have no doubt that the trial of defendant was free from prejudicial error as is demonstrated by the opinion in which I concur unqualifiedly; nevertheless, for what it may avail defendant, I wish to express my individual conviction that the sentence imposed was unduly severe.