## No. 16,078.

### TANGER *v*. THE PEOPLE.
#### (200 P. [2d] 922)

Decided November 29, 1948.   Rehearing denied December 20, 1948.

Messrs. ROGERS, BRUNO & ROGERS, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*In Department.*

MR. JUSTICE LUXFORD delivered the opinion of the court.

CARL TANGER, plaintiff in error, hereinafter designated defendant, and R. W. Mackall were convicted of the crime of conspiracy to obtain money by false pretense and sentenced to terms in the penitentiary. Defendant Tanger brings the case here for review of his conviction, alleging: (1) That the court erred in overruling his motion for directed verdict; (2) that the verdict was contrary to the evidence; (3) that the verdict was contrary to the law; and (4) that the verdict was contrary to the law and the evidence.

On March 30, 1947, defendant, a business investment broker, inserted the following advertisement in a local newspaper: "Clearing $500 every month and more. Call EA-1698." The complaining witness herein, Clifford Bullis, a filling station employee earning thirty dollars per week, and inexperienced in real-estate dealings, saw the ad, called the telephone number indicated, which was defendant's, and later went to the latter's office at 1912 East Colfax avenue, Denver, to discuss the matter. Bullis testified that defendant told him he had a *very good friend*, Richard M. Mackall, who had a real-estate and loan business located at 1085 South Pearl Street, Denver, and that he wanted to sell a half interest therein because it had increased to such an extent that one man could not handle it; that the business was clearing over $500 per month, which could be doubled if two men were to conduct it; that the half interest could be bought for $1500.00, and that Mackall would be willing to teach a new man all about real estate and obtain a license for him. Thereafter, they met at Mackall's office, which was in a small brick building, occupied by him on a month to month tenancy, equipped with a desk, chairs and telephone in the front room, and with living quarters in the rear occupied by him. They talked about the business, which defendant said he understood was bringing in an income from $500.00 to $800.00 per month, which statement was verified by Mackall. The next day all three met at defendant's office, then went to an at-,

torney's office where an option was signed covering the purchase by Bullis of the half interest in Mackall's business for $1500.00 and $200.00 was paid to apply on the purchase price; thereafter a partnership agreement was signed whereby Mackall transferred to Bullis an undivided one-half interest in the business, including office furniture and fixtures, and the balance of the purchase price, $1300.00, was paid by Bullis.

After obtaining the money from Bullis, neither Mackall nor Tanger took any further interest in him, and it was difficult for him even to obtain admission to his own office. No effort was made by Mackall to instruct him how to sell real estate, and when he did contact him he was in no condition to transact business because of over indulgence in intoxicating liquors. After trying in vain to obtain possession of his interest in the real-estate business, Bullis, never having received a key to the premises and Mackall having refused him admission to the office, caused the arrest of defendants which resulted in the instant prosecution.

It further appears from the evidence that from January 1947 to the time of the transaction involved herein, only one real-estate commission had been earned by Mackall and that, in the sum of $150.00; that Mackall listed the half interest in his business with Tanger for $1,000.00 net to him and Tanger simply added $500.00 to the sale price to cover his commission; that aside from the physical assets, valued at $450.00, this business was practically worthless, a fact known to defendants or reasonably ascertainable to Tanger, if not in fact actually known to him. Nevertheless, defendants falsely represented a one half interest in this business to be worth $1500.00, and by reason thereof took said sum from Bullis, the complaining witness herein, all to the latter's loss and damage. That the defendants obtained from Bullis $1500.00 is not denied, but whether or not its procurement was an attempt to defraud him was a

question properly referred by the court to the jury for determination.

(a) *Conspiracy.* We have held that, "Conspiracy imports a corrupt agreement between two or more persons, with guilty knowledge on the part of each." *Grandbouche v. People,* 104 Colo. 175, 182, 89 P. (2d) 577. And that, "From the nature of the case, the evidence of a combination to do an unlawful thing must usually be circumstantial, and the fact must be collected from collateral circumstances, and acts done in apparent concert, which tend to the accomplishment of the illegal purpose." *Solander v. People,* 2 Colo. 48, 65.

That defendant inserted an ad in a local paper, reading: "Clearing $500 every month or more"; that Bullis read it and went to defendant's office, and that they in turn met in Mackall's office is undisputed. Bullis testified that Tanger told him the business was bringing in from $500.00 to $800.00 per month, and that this statement was repeated at Mackall's office and corroborated by the latter. It is undisputed that those statements were false. According to Bullis, defendant made them and represented them as facts regarding the business of his "very good friend." In view of this entire record he should have known that his representations made at the time were false. Whether he did or not, and whether they were made in concert with Mackall to deceive and defraud Bullis of his $1500.00 was a question of fact which the trial judge properly submitted to the jury for determination.

(b) *False representations.* From the very inception, this case was tainted with fraud. It is admitted that defendant ran the ad, "Clearing $500 every month or more"; that Bullis answered it, and that it had reference to the business in which he afterwards bought a half interest for $1500.00, which business in fact, the record shows, had only produced $150.00 in revenue in the three previous months. A somewhat similar case is *Elliott v. People,* 56 Colo. 236, 138 Pac. 39. There, a real-estate

man published an advertisement, "Which on its face offered an opportunity to secure very considerable returns from a comparatively small investment, so worded as to readily attract the attention of the unsophisticated. The prosecuting witness, in response to this advertisement, called at the address named, where he found the defendant occupying an office * * *." At page 239 of the opinion appears the following statement by the court: "The office and fixtures were genuine, but by their means and the representations of defendant, the confidence of the witness was secured and his money obtained for that which was a myth. In other words, by the means indicated, the victim was led to believe that a business was valuable, which in fact did not exist. In the circumstances of this case, the fraud and deceit thus practiced * * * constitute the offense with which the defendant was charged."

According to Bullis, the complaining witness, the representations made not only were false, but they related to past and existing facts; that is, that the business was clearing, and had been clearing, $500.00 to $800.00 per month. Whether the representations were made as he claimed was a question of fact properly left to the jury to determine.

(c), (d) and (e). *Knowledge of false representations, deception and reliance.*

Bullis testified that defendant represented to him positively that Mackall's business was clearing from $500.00 to $800.00 per month. Whether or not this and other representations made by defendant to the complaining witness were false and fraudulent and made as a part of a conspiracy into which he had entered with Mackall to defraud Bullis of his money, was a fact question also properly submitted by the court to the jury. Bullis bought into what he thought, and was led to believe, was a prosperous business. It was not; it was practically worthless. Mackall knew it, and defendant should have known it. Bullis believed the representations made to

him by defendant, and, relying upon them, paid out his money. This is not a case of mere silence and suppression of the truth (*Stumpff v. People,* 51 Colo. 202, 204, 117 Pac. 134), but, according to Bullis, defendant made positive assertions as facts regarding Mackall's real-estate business, and, relying upon the false and fraudulent representations so made, he invested his money.

We find no error in the record. The jury's verdict is amply supported by the evidence, and the judgment is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE JACKSON concur.