No. 16,877.

GRAHAM *v.* THE PEOPLE.

(248 P. [2d] 730)

Decided September 30, 1952.

Mr. FRANK H. HALL, Mr. JOSEPH F. BURNS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

GREY GRAHAM was charged in a two-count information with a violation of our confidence game statute and with obtaining money under false pretenses. At the conclusion of all of the evidence, the district attorney, with the consent of the trial court, was granted a nolle prosequi to the charge of obtaining money under false pre-

tenses. At the conclusion of the case in chief, a motion was interposed by defendant for a directed verdict, which was denied, whereupon defendant rested without introducing any· evidence, and the cause was submitted to a jury, which returned its verdict finding defendant guilty of a violation of our confidence game statute. Motion for new trial was overruled and judgment entered on the verdict. Defendant was sentenced to a term in the penitentiary where he now is serving sentence. He is here by writ of error seeking a reversal of the judgment.

The evidence discloses that on or about July 30, 1951, defendant contacted John Benedetti as secretary of the "Boys Club" in Trinidad, Colorado, to see if he would sponsor a "donkey show." Defendant stated that he had presented the "donkey show" at several places in New Mexico and exhibited photographs and newspaper clippings with reference to exhibitions. He introduced one Cheer White, a whistler, who was to appear on the show as an entertainer. After Benedetti had discussed the proposition presented to him by defendant with others interested in the "Boys Club" a contract was entered into between the "Trinidad Boys Club" and "Cheer White with the Twelve Donkeys, managed and directed by the Donkey Comedy Company, P. O. Box 186, Topanga, California." The contract was executed in the name of the "Trinidad Boys Club" by John Benedetti and "The Donkey Comedy Company" by Grey Graham. The "donkey show" was to be presented in Trinidad on Sunday, August 19, 1951, at 8 o'clock P. M., at Central Park.

Defendant introduced Benedetti to one Regan, who was, under the terms of the contract, to solicit subscriptions from merchants for the "donkey show." Under direction of defendant, Benedetti was to retain fifty per cent of all sums subscribed by the merchants, delivering to Regan the balance thereof, which was to be divided between defendant and Regan on a basis agreed to between them. As a result of the efforts of Regan, assisted

by Benedetti and others interested in the "Boys Club," $524.00 was secured from merchants, which sum was divided in accordance with defendant's instructions.

After entering into the contract, defendant left Trinidad, ostensibly for the purpose of arranging for exhibitions in other towns in Colorado, and was not personally present in Trinidad again until shortly before his trial.

Shortly before August 18, 1951, defendant telephoned Benedetti, requesting him to advance $200.00 to pay the expenses of bringing the "show" to Trinidad, stating that he needed the money "because the donkeys were broken down in Phoenix, Arizona." This request was refused. On Saturday, August 17, 1951, Regan left Trinidad. Benedetti testified that he received a telegram from defendant stating that they were unable to show in Trinidad but would try to show later, or something to that effect, and that is the last that Benedetti heard of him.

Benedetti testified that all of the money collected by Regan was turned over to him, and he himself divided it in accordance with the instructions from defendant, and also that defendant had never stated that he owned the "show" or any of the personal property connected therewith.

There are six assignments of error, all of which may be summarized as challenging the sufficiency of the evidence to support a conviction under the confidence game statute.

The people cite our opinions in *Peiffer v. People,* 106 Colo. 533, 107 P. (2d) 799; *Kelly v. People,* 121 Colo. 243, 215 P. (2d) 336, and *McBride v. People,* 126 Colo. 277, 248 P. (2d) 725, announced on September 15, 1952, relying upon statements in these cases to support the judgment. We shall not attempt to distinguish the three cases cited from the instant case, but shall content ourselves with a portrayal of the factual situation here which clearly distinguishes this case from the three cases cited.

Here the people make no contention that the news-

paper clippings and letters presented by defendant to Benedetti were false or bogus; here there is no dispute but that the "donkey show" was in existence—nothing with reference thereto was false or bogus; here the contract with its terms and conditions was genuine—nothing pertaining thereto was false or bogus; here it affirmatively appears that due to financial difficulties defendant was unable to bring the "donkey show" to Trinidad for exhibition as provided in the contract, which contains ,a provision that "In case it is found necessary to call the events on account of rain, or other good reason, it shall be played at a later date to be agreed upon between the parties hereto." Here the complaining witness testified that he received a telegram from defendant stating "Unable to show in Trinidad, we will try to show later or something to that effect and that is the last I heard." At best the evidence here disclosed that on account of financial difficulties defendant breached his genuine contract with the "Boys Club," and under such circumstances his breach was not a violation of our confidence game statute.

There is no evidence here of the use of brace faro or any false or bogus checks or any means, tokens, symbols or device which were false, bogus or otherwise than genuine, and under the decisions of this court from *Lace v. People,* 43 Colo. 199, 95 Pac. 302, and adhered to in all thereof including *McBride v. People, supra,* the offense charged was not supported by any competent evidence. It was the duty of the trial court to grant defendant's motion for a directed verdict, and its failure to do so constitutes error.

The judgment is reversed and the cause remanded with instructions to set aside the judgment and dismiss the action.