No. 18,511.

WILLIAM G. FISCHER *v.* PEOPLE OF THE STATE OF COLORADO.
(335 P. [2d] 871)

Decided February 24, 1959.

Mr. GEORGE K. THOMAS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. NORMAN H. COMSTOCK, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error, defendant in the district court, seeks reversal of his conviction on the charge of confidence game and sentenced pronounced thereon of not less than two and not more than five years in the state penitentiary.

The information filed in the district court on May 9, 1957, charged the defendant with obtaining from one Georgia Willard, doing business as Dinner Bell Cafe, the sum of $37.50 by means and use of the confidence game. Trial was to a jury on July 18, 1957, and this resulted in a verdict of guilty.

On February 20, 1957, defendant appeared at the restaurant of the complaining witness, Georgia Willard, at 1585 South Pearl Street in Denver about 4:00 or 4:30 P.M. and asked whether she wanted to sell her place. She testified that she told him that she did not and that he then gave her a long sales talk. "Finally after he had been there about an hour he offered me $3750.00 for it, and I will never get that out of it again, so I said: 'Well, if you will wait until my mother calls I'll ask her.' "

Defendant then talked to Mrs. Willard's mother on the telephone and thereafter represented to her that he had the place sold. Mrs. Willard asked him if it was sold to the two ladies who had previously inquired about the business and he said that it was. He further stated that his buyers had authorized him to offer $3750.00 for the place, and that the two ladies who had tried to buy it had decided to go through a broker. He told Mrs. Wil-

lard that he would have the buyers at her place of business at 2:00 P.M. the next afternoon to sign the contract and that they would take over the restaurant within a week thereafter.

Defendant produced a copy of a Listing Agreement. This was on a printed form and purported to be that of "The Denver Sales and Consultation Business," also "Agents Selling Your Business and Colorado to the Nation." At the bottom of the form appeared the notation "Nationwide Service." Mrs. Willard refused to accept a provision in the contract calling for a 10% commission on the sale, whereupon, defendant said he would call his office and see what he could do about it. He left the room purportedly for that purpose and when he returned he crossed out the part relating to a commission and wrote in that "The seller is to receive $3750.00 net, commission is above the price." Also at the bottom of the printed contract was a receipt for $37.50 to be deducted from the agent's final commission at the time of sale. Defendant gave Mrs. Willard a receipt for this amount. She testified that he said he would return the $37.50 to her the next day when the contract was signed — that he had to have the $37.50 as a "token of my good faith." When the defendant left with the $37.50 he said he would return the next day at 2:00 o'clock with the buyers.

The next morning Mrs. Willard, desiring to change the appointment from 2:00 to 4:00 P.M., attempted to telephone defendant and then discovered that there was no telephone listed either for his business or for him personally. She then went to 938 Galapago Street, the address listed on the printed form as that of the Denver Sales and Consultants, and discovered that this was a vacant lot. She called the District Attorney's office and talked to Mr. De Credico, Investigator.

Belle Crookston and Mildred Murdie testified that they had inquired about purchasing the Dinner Bell Cafe a few days before February 20, 1957; that they did not

know the defendant and had never talked to him about buying the business.

De Credico testified that he arrested the defendant at Erie, Colorado, on March 6, 1957, in connection with a short check charge. Upon questioning, the defendant said that he was the owner of the Denver Sales and Consultants and that the address, 938 Galapago Street, had been the home of his parents which had been torn down. He admitted that he had obtained $37.50 from Mrs. Willard and that he had not contacted her since the day of his visit to her restaurant, nor had he made any attempt to appear with the purchasers. He stated further that he had been living in motels for 6 months and that occasionally he stopped at his parents' home.

Other witnesses testified to the defendant's obtaining similar amounts from them under circumstances almost identical with those described by Mrs. Willard.

The testimony of the defendant was not substantially different from that of Mrs. Willard. However, he denied that he had told her that he would appear at 2:00 P.M. the day following his obtaining the money. He also testified that he did not have a bank account and that he had lost commissions on the sale of three businesses totalling $55,000 because of the Better Business Bureau. He further testified that he had been convicted four times on short checks and had stood trial on Summary Courts Martial in the United States Navy in 1945. He had moved from 938 Galapago Street on December 2, 1956, and had noted his change of address at the Denver Post Office. He also stated that in January 1957 he had written several checks showing his address to be 938 Galapago Street.

It appears from the testimony of the defendant that after his dealings with Mrs. Willard he went to Erie, Colorado. One Don Vivians testified that the defendant acted for him in the purchase of the Bali-Hi Club at Erie. He said that defendant had represented him satisfactorily; had moved to Erie to help him get the business

started and had worked for him as a bartender. He said that he had not paid defendant a commission, but had advanced money to him from time to time.

The points relied upon by the defendant for reversal of the judgment are:

*First,* that the transaction in question is not shown to be a swindling operation or a confidence game — that it was a legitimate business transaction; there was no showing that the defendant obtained the confidence of the victim or abused that confidence.

*Secondly,* that the other transactions relied on as "similar offenses" were also legitimate and thus it was error to allow this evidence to be received as "similar offenses."

1. *Sufficiency of the Evidence.*

The controlling statutes are C.R.S. '53, 40-10-1 and -3. The former defines a confidence game and the latter declares that the definitive statute shall be liberally construed for the detection and punishment of offenders. Sec. 40-10-1, supra, provides:

"Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property by means of or by use of brace faro, or any false or bogus checks, or by any other means, instrument or device, commonly called confidence games, shall be liable to indictment, and on conviction shall be punished by imprisonment in the penitentiary for any term not less than one year, nor more than twenty years."

Defendant argues that the evidence fails to establish beyond a reasonable doubt that the defendant violated the above statute; that a reasonable analysis of the evidence permits the conclusion that the parties dealt at arm's length in a legitimate business transaction in which the complaining witness stood to realize personal profit, and that he was prevented from performing his part of the contract by his arrest. We are not impressed with the claim that this is a reasonable interpretation of the facts. Rather, viewing it in the light most favorable

to defendant, it is clear he misrepresented that he had a place of business; that he was a legitimate business chance broker; that he had a buyer who was ready to purchase the business at once and to pay the complaining witness the sum of $3750.00 therefor. All of this was implicit in the false and bogus contract which he employed to obtain the "good faith" advance of $37.50 from the complaining witness.

No doubt the defendant's argument would be more persuasive had he made some effort to consummate the sale and had he actually been in contact with the prospective purchasers. Instead he immediately left town and the only logical inference to be drawn from his sudden departure is that the transaction was bogus and designed to obtain the money which he persuaded the complaining witness to pay to him.

If, as the defendant contends, the confidence of the victim had been honestly obtained through the course of valid legal business dealings, we would be disposed to agree with his further conclusion that no violation of the confidence game statute would result. However, the evidence cannot be distorted to support such a contention. No part of defendant's activity here can be clothed with the mantle of a legitimate business transaction. A questionable transaction such as is disclosed here cannot be clothed with validity by the simple expedient of assuming a business name and having forms printed.

Exhibit A, the purported listing contract, together with the facts presented at the trial as outlined above, would appear to be a sufficient bogus device to justify the conclusion of the trial court that the prosecution had established a violation of the confidence game statute.

In *Kelly v. People,* 121 Colo. 243, 215 P. (2d) 336, it was said:

"The court further instructed the jury: 'To constitute the offense of "confidence game," the money or property must have been obtained, or the attempt thereto made,

by some false or bogus means, token, symbol or device, as distinguished from mere words, however false and fraudulent. Such offense is not necessarily limited to obtaining money or property by means of, or by use of brace faro, or any false or bogus checks, but includes any swindle perpetrated by any means, tokens, symbol or device, which is deceitful and illegitimately used to gain the confidence of the person thereby defrauded.'

"Counsel for defendant objected to the last sentence in the above instruction, stating as his reasons therefor that it 'improperly states the basis for a charge of confidence game. It gives the jury the right to find the defendant guilty if they determine that any token, or symbol, although not false, was deceitful and illegitimately used to gain the confidence of the complaining witness.' "

In *Elliott v. People,* 56 Colo. 236, 138 P. 39, we held that the offense was established even though the transaction had the appearance of legitimacy. The court said:

" * * * In the circumstances of this case, the fraud and deceit thus practiced, whereby the witness was defrauded, although on its face the transaction was made to assume a legitimate one, constitute the offense with which the defendant was charged. Such an offense is not limited to obtaining money by means of brace faro, loaded dice, marked cards, or false or bogus checks, but includes all swindles perpetrated by any device which is deceitful and illegitimately used to gain the confidence of the person thereby defrauded."

In *Peiffer v. People,* 106 Colo. 533, 107 P. (2d) 799, the defendant had obtained $500.00 in stock by the use of a false and bogus note. It was held that the note was a bogus instrument within the requirement of the statute.

"This contention rests upon the claim that there is no evidence that a false or bogus token of any kind was used and that such evidence is indispensable. True, some agreement seems to have been entered into concerning the terms of the transaction before the production by

defendant of Exhibit A, but that it was finally consummated by such exhibit can not be doubted. In the light of the facts developed this exhibit meets the full requirements of the statute. It is a 'bogus' 'instrument or device' well calculated to impose upon the unskilled and unwary. '35 C.S.A., c. 48, §222."

A contention similar to that here presented was urged in *Roll v. People,* 78 Colo. 589, 243 P. 641. In rejecting it, the court said:

"It is next contended that this check was obtained merely by verbal misrepresentations which, under the rule in *Wheeler v. People,* 49 Colo. 402, 113 Pac. 312, constitutes no offense under the confidence game statute; or that at most it was obtained by oral representations relied upon by Brubeck because of the deal with McGinnis, and hence the McGinnis contract was not the device used for obtaining the check and not the direct or proximate cause thereof, but the cause of the cause, and therefore, the evidence is insufficient under *Pierce v. People,* 81 Ill. 98. The argument is specious. So intricate and interwoven are the falsehoods, the fictitious deals and the fraudulent writings involved in this transaction that no man can put his finger on a single one of them and say with any certainty, this it was that induced Brubeck to part with his property. No witness pretended to do so. It is perfectly obvious that they were each a part of a single transaction, spread over a considerable period and numerous localities, each leading toward, and essential to, the culmination of the swindle. * * * "

The testimony in the case at bar is sufficient to satisfy the criteria of 40-10-1, supra, and the cited cases.

2. *Similar offenses.*

The testimony and exhibits offered to show that the transaction charged in the information was part of a plan, scheme and design were properly received. The position of defendant that these also were legitimate transactions and thus immaterial is not supported by the evidence. These transactions closely resemble the of-

fense charged and have a tendency to establish that the defendant " \* \* \* had a plan or design to produce a result of which the act charged in the information was a part." Instruction No. 11 limited this evidence of similar offense to that single purpose. The court also orally instructed the jury that the testimony concerning similar transactions was received for the limited purpose mentioned. The court's ruling on these questions was. correct. *McBride v. People,* 126 Colo. 277, 248 P. (2d) 725; *Roll v. People,* supra; *Elliott v. People,* supra.

Defendant was well represented in both the trial court and here and was afforded a fair trial. Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE KNAUSS not participating.