[No. 7107.]

POWERS V. THE PEOPLE.

1. CRIMINAL LAW—*Right of Accused to Time for Preparation for Trial*—To deny to an accused person reasonable opportunity to prepare for trial is not consonant with the fair and impartial administration of the law.

But where the informations were for a conspiracy to commit certain offenses, the fact that informations had been filed, months previously, based upon the same transactions, and charging the offense itself, that one of these had been set for trial, and afterwards continued, and counsel for the accused had been repeatedly advised by the district attorney that whenever the trial should occur it would be for a conspiracy to commit the offense, and not for the offense itself, so that counsel for the accused had had ample time for conference with his client, and to acquaint himself with the facts, and no claim was made that time was required to secure the attendance of witnesses, it was held that the accused was not prejudiced by requiring him to proceed to trial, immediately upon the denial of a motion to quash the information.

2. ——*Confidence Game*—The essential ingredients of the device designated by the statute (Rev. Stat. sec. 1783) as "confidence games" is the obtaining of the money of another by taking advantage of confidence which he reposes in the swindler. Those who combine to induce another to bet upon one of the contestants in a foot race, which it is arranged and agreed between them he shall lose, are guilty of a conspiracy to commit the offense denounced by the statute.

*Error to Denver District Court.*—Hon. GREELEY W. WHITFORD, Judge.

Messrs. MULLINS & WALDRON, Messrs. SMITH & MORAN, Mr. ALEXANDER M. SMITH, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, attorney general, Mr. GEORGE D. TALBOT, assistant attorney general, Mr. WILLIS VICTOR ELLIOTT, district attorney, Mr. JOHN HORNE CHILES, deputy district attorney, for the people.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error was found guilty of the crime of conspiring to commit the crime of obtaining money by a confidence game, and sentenced to a term in the penitentiary. The first question we shall consider is the claim that defendant was not given sufficient time to prepare for trial.

In the month of March, 1909, two informations were filed against the defendant, one charging him with the crime of larceny by the confidence game; the other in the first count charging the same offense, and in the second count, larceny. At the request of defendant the cases were continued over the term to September 14, 1909, to be set. While these cases were pending the district attorney repeatedly advised counsel for defendant that he would not try defendant on the charges made in the informations, but that when he did try him, it would be for conspiring to commit these offenses. The first of these cases had been regularly set for trial to begin on December 6, 1909. On December 4, 1909, the district attorney filed an information containing four counts, charging the defendant respectively with conspiracy to commit the crime of grand larceny, conspiracy to obtain money by the confidence game; conspiracy to obtain money under false pretences; and conspiracy to commit the crime of larceny as bailee. Two days later the defendant was arraigned and pleaded not guilty. The next day his counsel filed a motion to quash the information, which was overruled, and the case

at once set down for trial. Counsel for defendant in immediate charge of his case stated that he was not prepared to go to trial, and asked that the case be set down for the next day, which was refused, and the trial proceeded. Defendant was convicted under the second count of the information under consideration.

The action of the court in not granting the request of counsel for defendant to have the case set for trial the next day, after the motion to quash was overruled, was unnecessarily arbitrary, and were it not for the peculiar circumstances of this case, would compel a reversal. A defendant should always be afforded a reasonable opportunity to prepare for trial, and a failue to afford this right is neither consonant with a sense of justice or a fair and impartial administration of the law. It affirmatively appears, however, that, notwithstanding the celerity with which the prosecution was pushed, after the information was filed under which defendant was tried and convicted, it did not prejudice his rights. The transactions upon which the counts in this information were based, were identical with that upon which the charges in the two previous informations were predicated. One of these cases had previously been set for trial. Counsel for defendant had, therefore, had ample opportunity to confer with his client regarding these matters, and look up witnesses; in short, full opportunity to acquaint themselves with the facts bearing on these several charges. They had been advised, weeks before, that the charge upon which defendant would be tried would be under an information charging conspiracy. When the additional time was requested within which to prepare for trial it was not claimed that the defendant required time to obtain the attendance of witnesses. In the motion for a new trial, error was not based upon the ruling of the court refusing one day's additional time; so that the only ground upon which error could be predicated would be the refusal of the court to grant the defendant a reasonable time in which to prepare for trial after arraignment by consulting

counsel a sufficient length of time in advance of the trial so that they might be sufficiently advised regarding the facts to conduct an intelligent defense.

It appears that ample opportunity had been afforded for this purpose, and as the request for additional time was not to secure the attendance of witnesses or the taking of testimony, we conclude it affirmatively appears that defendant was not prejudiced by the ruling of the court complained of.

The next important question is, whether the evidence is sufficient to sustain the conviction. The offense which it is charged the defendant conspired to commit, and of which he was convicted, is defined as follows:

"Every person who shall obtain, or attempt to obtain, from any other person or persons any money or property by means of, or by the use of brace faro, or any false or bogus checks, or by any other means, instrument, or device, commonly called confidence games, shall be liable to indictment, and on conviction, shall be punished by imprisonment in the penitentiary for a term not less than one year, nor more than ten years." Sec. 1783, Rev. Stats. 1908.

On behalf of defendant it is contended that the testimony does not establish an attempt to commit, or the commission of the substantive crime; consequently, it is urged that the charge of conspiracy to commit it must fail. In support of this contention, *Wheeler v. The People*, 49 Colo. 402, is cited, where it was held that to constitute the offense named in the statute quoted something more than mere words must be employed; that is, some false or bogus means, token, symbol or device must have been used by which money or property was obtained from another. We think the case at bar is not only distinguishable from the Wheeler case, but that the testimony establishes facts constituting the crime, as stated in that case.

In brief, the testimony on behalf of the people is to the effect, that at the request of plaintiff in error, the prosecuting witness, Bowman, met him and one Jacobs at the grill

room of the Albany hotel, in the city of Denver.    Powers informed Bowman that he had a foot race on at Council Bluffs, Iowa, and wanted Bowman to go to that point and act as stake-holder.   Bowman said he did not care to go if the race was not straight, to which Powers replied that it was as straight as a string.    He also stated that Jacobs was his trainer.    Bowman then asked Powers if he could beat the other man.   Powers assured him that he could.   Bowman then wanted to know who the parties were that were going to bet on the foot race.    Powers told him they were wealthy and reputable people living in Council Bluffs, and that they had brought the man who was to run against him from New York.    In response to further inquiries on the part of Bowman, Powers informed him that Jacobs had a brother-in-law in Council Bluffs, who wanted to bet on the race; that he wanted a reliable person to hold the stakes; that if such a person could be found, to bring him along, and that he would pay the railway fare and hotel expenses.

Bowman had known Powers for some time; knew that he was a swift runner, and from his previous acquaintance believed he was honest and square, and finally consented to go.    When he reached Council Bluffs he went to a hotel. Shortly afterward a man by the name of Maxwell, who was the purported brother-in-law of Jacobs, came to his room in company with Jacobs and Powers.   Maxwell said that he had five thousand dollars, but he did not dare to bet that himself, and that he would turn it over to Bowman to bet, and that he, Maxwell, would act as stake-holder.   Other parties soon afterwards put in an appearance, who were introduced to Bowman by Maxwell, Jacobs and Powers as wealthy and reputable men, engaged in business in Council Bluffs, one of them asserting that he was a deacon in a church.   These parties were not the persons they claimed to be.   On the contrary, they were members of an organization made up of individuals from various sections engaged in initiating, and swindling people

by means of, bogus foot races. Bowman, however, was not aware of this.

A party by the name of Kelly was the one who was to run the race against Powers. These parties, with the assistance of others who had called on Bowman, prepared a contract for the foot race, which was signed by them, Powers, however, signing it under the name of McCabe. It set forth in detail all the terms and conditions of the race, when it was to be run, and the amount of the stakes, and, on its face, appeared to be perfectly fair. Subsequent developments established that it was a mere blind employed to induce Bowman to believe that the race thus arranged was *bona fide*. Various bets were made by the parties who appeared at the room. We do not believe it is necessary, however, to go into further detail, deeming it sufficient to state that after several bets had been made, Bowman asked Powers if he could beat Kelly, to which Powers replied: "I can run around him." Bowman then said: "Will you do it?" Powers answered that he would. Bowman again said to Powers: "If you say that, I will bet my life on it." After Maxwell's money had all been bet, which we understand was staked on Powers, Bowman said to the latter, if the game was square, he would bet on him, to which Powers replied: "It was square as a brick." The result was that Bowman was induced to put up several thousand dollars on Powers. Shortly after the race was run. The testimony discloses that it was bogus in every respect. Powers, of course, was defeated, and Bowman lost his money. Powers, in order to make it appear that he had honestly lost the race, placed in his mouth just before starting to run a small rubber bulb, filled with a red fluid. When near the end of the course, he bit this bulb so as to discharge the fluid it contained, and fell to the ground, thus making it appear, or intending to make it appear, that he was unable to continue because of the bursting of a blood vessel.

It is difficult to give an accurate definition of what is commonly called the "confidence game." Devices, schemes

and. plans invented and made use of by persons who resort to this means to swindle others are "as various as the mind of man is suggestive." Its essential ingredient is a swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. The offense aimed at by the statute is obtaining money by means, or use, of what is false or bogus. The race at Council Bluffs was unquestionably bogus. Bowman having confidence in the integrity of Powers and his ability to win the race, and confiding in his representations, was induced by the latter, on the assurance that he would, and that the race was *bona fide,* to bet that he would win. When these representations were made which induced Bowman to bet, the purpose of the parties concerned, including Powers, was that he should lose, and thus swindle Bowman. These undisputed facts establish the offense named in the statute. The evidence establishes beyond question that the race which Powers represented to Bowman in Denver he had arranged to run, was to be a bogus one. The purpose of Powers and Jacobs when they met Bowman at the Albany hotel pursuant to an arrangement between them, was to induce Bowman to bet on this bogus race. They succeeded in inducing him to go to Council Bluffs for that purpose. They knew it was to be a purely bogus and swindling affair; and their purpose was to swindle Bowman out of his money by this means. This constitutes an offense under the criminal laws of this state. Our statutes also provide that if two or more persons agree, conspire or co-operate to do, or aid in the doing of, an unlawful act, each of the persons so offending shall, on conviction, be deemed guilty of conspiracy. The evidence undoubtedly establishes that Powers is guilty of the crime for which he was tried and convicted.

Other errors assigned on behalf of defendant are not noticed in detail for the reason that they are not of sufficient moment to require consideration. The undisputed evidence established the defendant's guilt, and the other alleged errors

committed at the trial could not have influenced the jury in rendering a verdict.

The judgment of the district court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.