No. 16,227.

KELLY v. THE PEOPLE.
(215 P. [2d] 336)

Decided February 6, 1950.

244

Mr. Isaac Mellman, Mr. Paul C. Lennartz, for plaintiff in error.

Mr. John W. Metzger, Attorney General, Mr. Raymond B. Danks, Assistant, for the people.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

George Kelly was convicted of a violation of our "Confidence Game" statute and sentenced to a term in

the penitentiary. He brings the case here by writ of error seeking a reversal of the judgment.

At the trial the evidence disclosed that one Peter Loos, a farmer residing in Logan county, Colorado, was the owner of twenty shares of stock of Bankers Union Life Company, and on the 4th day of August, 1948, defendant, at that time a complete stranger to Loos, called at the latter's farm home and induced him to endorse and deliver his Bankers Union stock to him. Defendant, in consideration for receiving Loos' stock, then promised to deliver to him ten shares of stock in an industrial bank or finance company in Denver, which defendant represented he owned and which would pay Loos an annual dividend of seven and one-half per cent.

A portfolio which defendant exhibited to Loos in persuading him to exchange his Bankers Union Life stock for promised stock in defendant's industrial bank or finance company contained a stock certificate in another company which had advantageous provisions, written in small print, for the payment of an annual dividend of seven and one-half per cent, and defendant then stated that the stock certificate in his industrial bank or finance company contained like provisions. The portfolio also contained a certificate of reservation of corporate name "Continental Finance Corporation" issued by the secretary of state on the 30th day of April, 1948; tables showing the income from various sums loaned at ten per cent; numerous loans to individuals on chattel mortgages disclosing the amounts paid by the borrower; also statements of numbers of loans made, dollar volume, outstanding balance and earned interest, certified by one representing himself to be the secretary and comptroller of "Legal Fund Finance Corporation" indicating earnings of some twenty-three to thirty-six per cent on the capital employed; a letter from the Denver National Bank, under date of August 6, 1946, addressed to Mr. George Kelly, appreciating his selection of the bank as a depository; clipping from the Un-

ion Life Insurance Company, of Little Rock, Arkansas, with a picture of Kelly as one of the 1946 leaders in written production; letters from the Union Life Insurance Company, of Little Rock, and from The London & Lancashire Insurance Co., Ltd., with reference to agency matters, bearing dates in early 1947; letter dated 1946, from Occidental Life Insurance Company of California, with reference to his agency; various tables showing monthly payment charts on used cars and furniture loans; four pictures of what defendant represented to be his Denver office; pictures of three airplanes which defendant stated he owned and one which he was about to purchase; and various other instruments and documents. One of the documents, issued by the secretary of state's office, was represented as evidence of defendant's right and authority as a broker and industrial bank. He presented a business card bearing the name "George Kelly, Inc., Brokers, Denver National Bank Building, Denver, Colorado." and when he obtained the stock from Loos, he immediately placed the same in a business envelope upon which was the following: "George Kelly, Inc., Denver National Bank Building, Denver 2, Colorado" and stated that this envelope would immediately be mailed to his Denver office. At the time he obtained the Loos certificate, he made some excuse or explanation to the effect that it would be about thirty days before Loos would receive the stock in his industrial bank or finance company, and that he would deliver it personally. After some time had elapsed and Loos had not received his stock certificate, a letter was written to defendant, requesting some explanation, to which defendant replied by telegram that the stock had been mailed on August 26 and apparently had been lost in the mail, and that a duplicate certificate would be immediately forthcoming. No certificate was ever received by Loos.

The evidence further discloses that defendant, within two days after receiving the Bankers Union Life stock

from Loos, sold the same to a broker for $600, representing to the broker to whom the stock was sold that it had been received by him as part payment on an airplane. Further, the evidence disclosed that no articles of incorporation were ever filed in the office of the secretary of state under the name of "George Kelly, Inc." or "George Kelly, Incorporated" but did disclose that on April 30, 1948, the Continental Finance Company filed a reservation of name in the office of the secretary of state, and subsequently, on August 31, 1948, filed a like reservation for the same name, but no articles of incorporation for that company were ever filed, nor does the evidence disclose by whom the reservation was made.

It further appears from the evidence that one George Kelly did rent an office in the Denver National Bank Building from June, 1947, until June, 1948, but on the last date the office was vacated, and that no George Kelly had an office in that building subsequent thereto. With reference to the office photographs exhibited by defendant, the evidence disclosed that these were pictures of a finance company office located on South Broadway in Denver.

At the time defendant secured the Bankers Union Life Company stock from Loos, he represented that he had been a major general in the Air Corps during World War 2, serving in several theatres of operation, but he stated to the officers at the time of his arrest that he had not served in the armed forces, and he then stated that the money which he had received from the sale of the Loos stock was being held in trust in the Denver National Bank; however, an officer of the Denver National Bank testified that while there was an account in the name of "George Kelly, Inc." in that bank, there had been no deposits to or withdrawals therefrom since August 1, 1948, and that the balance to the credit of the account was $3.55.

Other witnesses were called who testified that they

had delivered their Bankers Union Life Company stock to defendant upon like or similar representations, and the portfolio and its contents was used by defendant in the same manner as used in procuring the Loos stock. No testimony whatever was offered at the trial on behalf of the defendant.

A motion for a new trial was based upon eighteen grounds, and after argument thereon was overruled. The assignments of error presented here are nineteen in number, but are consolidated and presented by counsel for defendant under the following: 1. Refusal to grant a motion for mistrial; 2. error in giving instruction No. 4; 3. refusal to sustain challenge for cause to a juror whose brother is a witness; 4. verdict is contrary to the law and the evidence; 5. error in denying defendant's right to take depositions. These will be discussed in the above order.

1. Counsel's arguments to the jury are not preserved in the record; however, the incident giving rise to this assignment appears in the record: "Mr. Mellman: Your Honor please, we object to that statement by the District Attorney as definitely prejudicial to the defendant and wish to have the record show what the District Attorney just stated.

"The Court: The record will so show.

(Inasmuch as the closing arguments were not reported the following proceedings were had:)

"Mr. Mellman: Your Honor please, we would like to have the record show that the District Attorney said that if they had had no case, or brought the wrong charge, that the Court would have taken the case away from the jury. We object to that statement. We feel that it is definitely prejudicial to the defendant, and we ask for a mistrial on that.

"Mr. Paynter: That was in answer to counsel's statement that the reason they did not put on any evidence was because we had no case. Now in order that there be no misapprehension created by that statement—

"Mr. Mellman: Just a minute—is he going to argue further?

"The Court: No, he is just answering—

"Mr. Paynter: In order that there may be no misapprehension created by that statement, it is your duty, gentlemen, to determine the facts of the case, and whether the facts of the case have been established here; whether we have proven the elements of the case as set out in the instructions of the court—

"Mr. Mellman: If your Honor please—

"The Court: I think the court should rule on the motion. The motion [for mistrial] is overruled, and the jury is instructed to disregard any statement of counsel as to the duty of the court.

"Mr. Mellman: We save an exception to the ruling of the Court."

The denial of the motion for a mistrial was one of the errors assigned in defendant's motion for a new trial, and with reference thereto the court said in part: "The defendant introduced no evidence, and his counsel based his argument on the position that the People had not made a case of 'Confidence Game' against the defendant, and that they 'had no case.' The Court felt that the statements of the People's counsel, to which objection has been taken, was made in answer to the statement of defendant's counsel and was invited thereby. The Court did not detect or interpret in the District Attorney's statement an intention to go outside the record in an effort to mislead the jury; neither did the Court take counsel's statement as an expression of the opinion of either himself or the Court; but, as the Court's admonition given to the jury would indicate, was merely a statement of the Court's duty in ruling on the Motion for a new trial [mistrial]. The Court is of the opinion that his admonition given at the time was sufficient to clarify the situation and did avoid the jury being mislead or the defendant being prejudiced by the inadvertent statement of counsel."

■ From an examination and study of numerous decisions in ours, as well as other jurisdictions, we are convinced that a motion for a mistrial should not be granted except in extraordinary circumstances and to prevent a miscarriage of justice. The granting or denial of such a motion rests in the sound discretion of the trial court. A trial court in ruling on a motion for mistrial is exercising a discretion which will not be disturbed by an appellate tribunal unless it is clearly apparent that the court's discretion was abused, which abuse resulted in prejudice, and a denial of justice. The trial court found, and with this finding we agree, that the argument of the district attorney was provoked by the statement of defendant's counsel and was retaliatory. *Jordan v. People,* 19 Colo. 417, 36 Pac. 218; *Manzoli v. People,* 69 Colo. 131, 169 Pac. 144; *Goodfellow v. People,* 75 Colo. 243, 224 Pac. 1051; *Fries v. People,* 80 Colo. 430, 252 Pac. 341; *Grandbouche v. People,* 104 Colo. 175, 89 P. (2d) 577; *Harris v. People,* 113 Colo. 511, 160 P. (2d) 372; *Gallegos v. People,* 116 Colo. 129, 179 P. (2d) 272; *Wolf v. People,* 117 Colo. 279, 187 P. (2d) 926; *Lee v. United States,* 91 F. (2d) 326; *People v. Bigge,* 297 Mich. 58, 297 N.W. 70; *State v. Geiger,* 129 N. J. Law 13, 31 A. (2d) 42; *State v. Williamson,* 134 Conn. 203, 56 A. (2d) 460; *People v. Robinson,* 273 N. Y. 438, 8 N.E. (2d) 25; *Commonwealth v. Barker,* 311 Mass. 82, 40 N.E. (2d) 265; 23 C.J.S., p. 587, §1108; 23 C.J.S., p. 281, §961.

The Court instructed the jury: "It is the duty of the jury to determine the facts. In so doing, the jury is confined *exclusively* to the evidence in this case. The opening statements and arguments of counsel are not evidence but are made to assist you in comprehending the evidence and applying the law thereto. * * * "

The denial of the motion for mistrial did not constitute prejudicial error.

■ 2. Our statute defining the "Confidence Game" reads in part: "Every person who shall obtain, or at-

tempt to obtain, from any other person or persons, any money or property by means of or by use of brace faro, or any false or bogus checks, or by any other means, instrument or device, commonly called confidence games, shall be liable to indictment, * * *." '35 C.S.A., c. 48, §222.

The court further instructed the jury: "To constitute the offense of 'confidence game,' the money or property must have been obtained, or the attempt thereto made, by some false or bogus means, token, symbol or device, as distinguished from mere words, however false and fraudulent. Such offense is not necessarily limited to obtaining money or property by means of, or by use of brace faro, or any false or bogus checks, but includes any swindle perpetrated by any means, tokens, symbol or device, which is deceitful and illegitimately used to gain the confidence of the person thereby defrauded."

Counsel for defendant objected to the last sentence in the above instruction, stating as his reasons therefor that it "improperly states the basis of a charge of confidence game. It gives the jury the right to find the defendant guilty if they determine that any token, or symbol, although not false, was deceitful and illegitimately used to gain the confidence of the complaining witness."

In *Powers v. People,* 53 Colo. 43, 123 Pac. 642, the charge was a conspiracy to commit the crime of obtaining money by the confidence game. Powers was convicted, and in affirming the judgment, we said: "It is difficult to give an accurate definition of what is commonly called the 'confidence game.' Devices, schemes and plans invented and made use of by persons who resort to this means to swindle others are 'as various as the mind of man is suggestive.' Its essential ingredient is a swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. The offense aimed at by the statute is ob-

taining money by means, or use, of what is false or bogus."

In *Elliott v. People*, 56 Colo. 236, 138 Pac. 39, defendant was charged with, and convicted of, a violation of the confidence game statute, and the judgment was affirmed. It was contended that the evidence was not sufficient to sustain the conviction, and with reference to the coverage of the act defining the crime, our court said: " 'Confidence game' can hardly be defined in a manner which would cover all cases, for the reason that schemes, the purposes of which is to swindle others, are, as has been frequently stated, 'As various as the mind of man is suggestive.' Generally speaking, it is a swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler. The offense intended to be covered by the statute is obtaining money by means or use of that which is false or bogus. (citing cases)

\* \* \*

"In the circumstances of this case, the fraud and deceit thus practiced, whereby the witness was defrauded, although on its face the transaction was made to assume a legitimate one, constitute the offense with which the defendant was charged. Such an offense is not limited to obtaining money by means of brace faro, loaded dice, marked cards, or false or bogus checks, *but includes all swindles perpetrated by any device which is deceitful and illegitimately used to gain the confidence of the person thereby defrauded.*" (Italics ours)

In *Peiffer v. People*, 106 Colo. 533, 107 P. (2d) 799, wherein defendant was convicted under the "confidence game" statute, we discussed the applicable law. In the following quotation from that case, in order to show its applicability to the one here under consideration, we have set out in brackets the names of the parties and designations herein corresponding to those in that proceeding:

"So peculiar, numerous and diversified are the schemes employed to swindle victims that no statute can specifically cover them, and no accurate definition including all can be framed by the courts. *Powers v. People,* 53 Colo. 43, 123 Pac. 642; *Elliott v. People,* 56 Colo. 236, 138 Pac. 39. Another case decided by this court is particularly applicable. Therein a contract played a part similar to that of the 'note' in the instant case. *Roll v. People,* 78 Colo. 589, 243 Pac. 641. The solemnity and apparent dignity and regularity of the printed form of Exhibit A, the flaunted address carrying the impression of a substantial business location, the printed signature of the company as of something important, and that in pencil by the defendant, as some minor representative, all stamp it as the very kind of device intended by the statute. As trusting as Mrs. Russell and Mrs. Boland [Loos] appear to have been, it is incredible that they [he] would have parted with their [his] property had defendant [Kelly] frankly said, 'I am the United Sales Service [George Kelly, Inc. Brokers Denver National Bank Bldg. Denver, Colorado George Kelly, President Ta. 1014, or an industrial bank or the Continental Finance Company]. I [Kelly] never was in the Wilda Building [Denver National Bank Building] but for a few days. This contract [agreement to deliver shares of stock in an unorganized corporation] depends for its validity solely upon my own integrity and financial standing.' The idea is preposterous."

The instruction, supra, to which defendant objected, under the evidence here, correctly defines "Confidence Game," and, consequently, no error was committed by giving the same to the jury.

3. In the examination of jurors on their voir dire, it appeared that Gus Marks, a juror then in the box, upon interrogation, stated that he was a brother of O. M. Marks, who was endorsed as a People's witness on the information, whereupon, solely on that ground— so far as here appears—defendent challenged the juror

for cause, and the challenge was denied. Subsequently, defendant exercised one of his preemptory challenges and excused Marks, and, before accepting the jury, exhausted all his preemptory challenges. Marks, the endorsed witness, although subpoenaed and in attendance at the trial, was not called as a witness. Respecting this challenge the following appears in the record:

"Mr. Lennartz: Your Honor please, we wish to challenge Mr. Marks for cause due to the fact that he is related to one of the witnesses for the People in this case.

"Mr. Paynter: I don't think that is grounds for challenge, Your Honor. I don't think there is anything in the statute to that effect.

"(Thereupon the Judge questioned Mr. Marks, after which he made the following ruling:)

"The Court: I think the challenge should be denied.

"Mr. Lennartz: Save an exception."

Other than the specific grounds enumerated in the statute (chapter 95, '35 C.S.A.) for challenges for cause, the trial court is vested with a sound discretion in ruling upon challenges, and, under the facts here, that discretion was not abused. *Johnson v. People,* 110 Colo. 283, 133 P. (2d) 789.

■ 4. We have herein held that the court did not err in its definition of the term "Confidence Game," as the same is used in our statute, and it is now insisted that, until the court permitted the prosecution to recall its witness Loos for a further examination, there was no evidence whatever supporting the charge in the information. It is the general rule that the trial court may permit a witness to be recalled before the prosecution or defense has rested if in so doing it exercises a sound discretion. Before the People in the instant case had rested, the deputy district attorney asked leave to recall the witness Loos for further direct examination, to which defendant's counsel objected, and his objection

was overruled. When the witness was recalled, he was asked this question:

"Q. Mr. Loos, I call your attention to People's Exhibit 'C', being the certificate of stock in the Bankers Union Life Company, about which testimony was given yesterday. I will now ask you, Mr. Loos, what induced you to deliver that certificate of stock to the defendant, George Kelly?

"Mr. Mellman: Your Honor please, we object to the question—it was asked in direct examination yesterday —for the reason that the witness has testified to the matters that transpired between him and the defendant and the question is improper and calls for the conclusion of this witness among other things.

"The Court: The objection is overruled.

"Mr. Mellman: Save an exception.

"Q. You may answer, Mr. Loos. A. The reason I turned this stock over to Mr. Kelly is because of what he told me and showed me."

There was no further examination and no cross-examination pertaining to the question and answer.

As we understand defendant's counsel, it is contended that in permitting the witness to be recalled and interrogated as above indicated, the court acted arbitrarily. We cannot perceive any prejudice to defendant by the question and answer, and the trial court did not abuse its discretion in permitting the witness to be recalled for further direct examination.

5. In considering this assignment, attention should be directed to the record in the case. The information was filed on September 28, 1948, and bond fixed in the sum of $10,000; on October 19, 1948, defendant's counsel moved for a reduction of the bond, which was denied by the trial court, and, according to the record, on a date prior to November 22, 1948, the trial was set for November 29, 1948. On November 22, 1948, defendant's counsel filed a motion by which they sought from the district attorney the addresses of the

witnesses endorsed upon the information, and in the same motion they asked for a continuance for a reasonable period in order that they might properly prepare for the defense and trial. On November 22, 1948, defendant's counsel filed a notice and motion to take depositions, and therein they specified the names and addresses of six witnesses whose depositions they desired to take. The court denied both motions, and in so doing stated to defendant's counsel:

"The Court: The Court is of the opinion that you have no right to require of the People anything beyond the requirement of the Statute, which, as I read the Statute, have been met. I feel that it has been stated by counsel for defendant that it is the position of the People to withhold information relative to their witnesses. I might say this to counsel for the defendant: that if there should be such attitude on the part of the People, and you are unable to find the address of any witness, or witnesses, the Court will be glad to assist you in whatever assistance is necessary to persuade the District Attorney to divulge the address, or addresses, if he has them, which I presume he has, of the witnesses.

"In view of the fact that the Court continued this case for a period of nearly thirty days in recognition of the fact that defendant had not been able to furnish bond, and only recently had appearance entered on his behalf of counsel, the Court is not inclined to continue the case unless there be additional showing.

\* \* \*

"Mr. Lennartz: Save an exception, please. Now, your Honor, with the second motion, which is a motion to permit the defendant to take the depositions of, I believe, six parties as is set out fully in the motion, Section 470, Chapter 48, Colorado Statutes Annotated, 1935—

"The Court: I am familiar with your section, Mr. Lennartz, if you will just enlarge on it as to your reason and application thereunder."

In denying the motion to take depositions and with reference thereto, the court stated:

"The Court: The Court is of the opinion that the Section 470, Chapter 48, of our Statutes referred to by counsel in their argument is for the purpose of securing and assuring the presence of the witness at the trial or their testimony, and the requirement of the Statute that the District Attorney endorse his witnesses on his information so as to advise the defendant of the witnesses for the People and to give the defendant an opportunity to contact, examine and question those witnesses. There is no discovery provision as far as the criminal Statutes are concerned of which the Court is aware. May I inquire of the District Attorney and of the attorney for the defendant whether the witnesses named, with reference to the depositions, have been subpoenaed?

\* \* \*

"The Court: The Court will suggest, possibly I should order, in my ruling that the District Attorney issue subpoenaes for those of the witnesses named for whom subpoenaes have not already been issued, contrary to the practice, in view of the motion. However, I feel that it is important that the process of the Court be exercised to assure the presence of the witnesses. The Court also feels that the presence of those witnesses so that their testimony is available to the defendant is a desired matter, as well as being for the People, to make such use of the testimony as they may desire. \* \* \*

\* \* \*

"Were these witnesses not available at the time of trial, the Court, in view of the ruling which I am making overruling your motion, would at that time entertain further motion for continuance of the case. I think you are entitled to that testimony and that you are secure in that testimony. Further than that, the Court feels you are not entitled, and for that reason the motion is overruled."

The title of the act under which these depositions

were sought to be taken reads: "An act to secure the attendance of witnesses in criminal cases and to provide for the taking of bonds in that behalf, for taking the deposition of such witnesses, and to repeal sections 7084, 7085, and 7086 of the Compiled Laws of Colorado 1921." S.L. '27, p. 290.

It is apparent from the title of the act and a consideration of its provisions that depositions of witnesses in criminal cases may be taken where there is some reason to believe that the witnesses may not be available at the trial, and, consequently, this statute was enacted. In the instant case the court ordered the witnesses subpoenaed, and expressed the opinion that they must be present at the trial, and, in event of their absence, a continuance might then be granted in order to obtain their testimony. Mr. Lennartz, in presenting the matter of the taking of the depositions, stated in part: "I believe the information—although we don't believe it is weak enough or to the point where it may be reversible error—we do believe it is not specific enough, or informative enough, to us, and particularly under our new rules of practice where great latitude is given. *We believe it is advisable in any criminal case to find out the facts rather than merely having to rely upon some statutory declaration in the charge. The only way we have is taking the depositions of these parties for whom we have asked.*" (Italics ours)

The notice for the taking of the deposition was addressed to the judge of the district court and read: "You are hereby notified that in the opinion of the defendant, it is necessary and advisable that the testimony of [six persons named and their addresses given] witnesses on behalf of the defendant in the above entitled action shall be secured by deposition for the trial upon the information in said action."

The names of these same six persons were endorsed as witnesses for the People and, as we have said, were under subpoena to be in attendance at the trial, except

the district attorney announced on the hearing of the motion on the 22nd day of November, 1948, that Vearl Day would not be interrogated by the prosecution, but would be available if defendant needed him. The notice characterized these witnesses as witnesses for defendant, but none were called as such.

Counsel for defendant direct our attention to an order entered in Bradley Heald v. District Court, No. 16099 on our docket, and cite this as authority for his right to take the deposition of the witnesses named in the notice. In Heald v. District Court, supra, the notice was proper and the order entered by the district court for the taking of the deposition. The witness appeared at the time and place specified in the order and was sworn, whereupon the district attorney asked the witness in effect if he desired to have his deposition taken, to which he replied evasively. The district attorney then objected to the taking of the deposition, and the court excused the witness. There was a very apparent and persuasive reason assigned in the notice for the taking of the deposition of the witness in that case, whereas here there is none. "The taking of a deposition will not be permitted where it is evident that applicant is not proceeding in good faith, as where the application is a fishing expedition to discover in advance of the trial what the witness will testify to, * * *." 26 C.J.S., p. 884, §37.

In the instant case it will be noted that the filing of the notice to take the depositions and the filing of a motion for a continuance were contemporaneous and both motions were denied at the same time. The statement of counsel would justify the assumption that the taking of the deposition of these witnesses was a fishing expedition.

In passing upon the motion for a new trial and upon the assigned error of the court in denying defendant's motion to take the deposition of the witnesses, the court said: "As to paragraph 2 of the motion, defendant's motion to take the depositions of the witnesses * * *

260

was based on no showing that their attendance at the trial of the case could not be obtained, or that they were contemplating being absent at that time. The persons involved were members of the sheriff's office of Logan County, Colorado, the complaining witness and his wife, and an additional principal witness. The Court directed that subpoenas be served on all of them forthwith, which was done, and they were all present at the trial of the case, were available to give such testimony as the defendant might have desired to elicit from them, and none of them were called as witnesses on behalf of the defendant, although all but one did testify on behalf of the People and were subject to cross examination by defendant. That the parties were all available for consultation by attorneys for the defendant prior to the time of the trial, that the Court is of the opinion that depositions for the purposes of 'discovery' were not contemplated by Sec. 470 of Chap. 48, C.S.A., that the defendant was in no way prejudiced or hampered in his defense by refusal to take the depositions moved for by the defendant, the motion is overruled on this ground."

Under the circumstances existing here, and in view of the action taken by the trial court in connection with the notice to take the depositions of these witnesses, and in consideration of the lateness of the notice, defendant was not prejudiced by the court's denial of his motion to take these depositions.

The trial court was exceptionally diligent in safeguarding defendant's every right at the trial, and his counsel ably represented him but were unable to extricate him from the web which he himself had woven.

The judgment is affirmed.