Mr. Justice Hall
delivered the opinion of the Court.
We refer to plaintiff in error as Rozek, to all defendants in error as such, to Christen, Farrell and Lunine individually by name, or together as “the expected adverse parties,” and to Tippo, Brown, Newton, Nossaman, Rense and Waldrop individually by name, or together as “the witnesses.”
On May 9, 1962, Rozek filed his verified petition in the District Court of Boulder County, whereby he sought to be allowed to examine the defendants in error under oath and to perpetuate their testimony.
Rozek seeks to invoke the aid afforded by R.C.P. Colo., Rule 27(a) (1), pertinent portions of which provide:
“A person who desires to perpetuate his own testimony or that of other persons may file in a district or county court a petition verified by his oath * * * stating: either: (1) that the petitioner expects to be a party to an action in a court in this state and, in such case, the name of the persons who he eospects will be adverse parties; or (2) that the proof of some facts is necessary to perfect the title to property in which petitioner is interested or others similarly situated may be interested or to establish any other matter which it may hereafter become material to establish, including marriage, divorce, birth, death, descent or heirship, though no action may at any time be anticipated, or, if anticipated, the expected adverse parties to such action are unknown to petitioner. The petition shall also state the names of the witnesses to be examined and their places of residence and a brief outline of the facts expected to be proved, * * *. The court shall make an order * * * directing notice to be given, which notice, if the expected adverse parties are named in the petition, shall be personally served on them * * *. Such notice shall state * * * a brief outline of the facts expected to be proved * * (Emphasis supplied.)
*600 Rozek, in his verified petition, among other things, stated:
“The petitioner represents and states to the Court that he expects to be a party to an action in the District Court In and For the County of Boulder, State of Colorado; that Samuel E. Christen, John Farrell, Myron J. Lunine, and numerous parties to the petitioner unknown at this time, have conspired and connived with the named individuals, and are expected to be adverse parties in the event a complaint is filed.
“The petitioner further states that * * * on March 6, 1962, there appeared in the Colorado Daily, a newspaper published and circulated on the University Campus and elsewhere * * * an article attacking the petitioner, and more particularly containing statements relating to the petitioners qualifications as a teacher, scholar and lecturer and as a loyal citizen of the United States, which statements were false and libelous per se;” (Emphasis supplied.)
From the foregoing it appears that Rozek has been libeled and that he expects to seek redress through judicial process for the injuries inflicted upon him by publication of the libel — in the event a complaint is filed.
Rozek might well have stopped here. He did not, but in his petition voices further complaints, in substance that:
1. He believes that the article in which he was libelled is “but an incident in a conspiracy * * * to stifle academic freedom and thwart * * * opinions contrary to those * * * of the Colorado Daily;”
2. That “the conspiracy, heretofore alleged, * * * indicates a design * * * to injure * * * petitioner and interfere with his contractual rights * * *; * * * the objects and purposes of said conspiracy are violative of the statutes and laws governing the University and violative of the principals [sic] of academic freedom;”
3. That “activities and statements done and made by those named and others to the petitioner unknown * * * indicate an intent * * * to justify the * * * libel * * *;”
*601 4. That “* * * there appears to be a concerted scheme and effort to make it impossible for anyone to express an academic opinion inconsistent with the concepts, ideologies and beliefs favored by those who have been placed in charge by the University of Colorado authorities, or have otherwise gained control of the public press (Colorado Daily) * * *, and said conspirators make it impossible to express in an academic atmosphere opinions supporting the basic precepts of our constitution and the majority accepted form of American government * * *.”
In addition to the foregoing, Rozek, according to statements made by one of his counsel in argument presented to the trial court, and perpetuated and here presented in the record for our consideration, has other problems which presumably furnish background and motive for seeking judicial redress on matters wholly unrelated to his contemplated libel action.
The nature and extent of some of these further problems, as portrayed by his counsel to the trial court and to us, are as follows:
“* * * To sustain a bill of this character, it must appear that the facts which the plaintiff expects to prove by the testimony of the witnesses sought to be examined will be material in the determination of the matter in controversy; that the testimony will be competent evidence, that depositions of the witnesses cannot be taken and perpetuated in the ordinary methods.
“* * * We are not assembling because Dr. Rozek is in a fit of temper; because somebody is having a household quarrel within the University of Colorado. We are assembled because the administration of that University is trying to drive it into a state of total collapse and ruin. And we will demonstrate in the petition before you exactly what is mentioned and why we wish to perpetuate what is done here.”
“Mr. Newton is President of the University — and cer *602 tainly he is with a vengeance — and that as such he is responsible for administering the policies, rules and regulations of the University and the constitution and laws of the State of Colorado. He is even responsible for legislating the regents, attending regents’ meetings, not trying to get them out — not for censoring the regents for not removing him, obscurating information and statements that blackens Mr. Newton. I don’t remember one scandal before Mr. Newton took control of the University for fourteen years that I have know [sic] it, for the three years since he has been there there has not been one period of a month when it wasn’t rocked by one. And most of the scandal wasn’t named Rozek. Some named Ward — some eight football players — some a paymaster who sought to become a coach — some a coach who did his job and got fired — some were the regents and some were the American Legion. And everything must be hidden because nobody dares criticize Quigg Newton and live. Not on this campus.”
* * *
“* * * The university is the heart and soul of this community and it isn’t the administration and it isn’t Quigg Newton and obscuration and blackness, and dark flashing oppression of those who politically speak on the left or the right. They have a right to speak whether they are right or left of center, or anything else they will bespeak, and professors have been maligned and had mud slung at them because they have done so. If there is any way to prevent this, and the courts are the only forum left, I shall try and the courts will try to see that the forum is kept.
“It is not my intention to use pathos or impassioned speech. But it is outrageous for any kind of an administration to be run by a man not qualified either for education, sociologically or temporally, personally or professionally qualified, to come upon a campus and tear it assunder (sic) and hide it in clouds of blackness and *603 obscuration, and malign things, does try to destroy it and tear it apart to remold it in his own image. * * *
Thus it appears that Rozek has two interests:
1. As an individual he seeks redress from the expected adverse parties for an injury inflicted upon him through libel.
2. As a citizen and as a professor at the University he wants wrongs that he feels exist in the functioning of the University righted and that the University be cast in a new image which would meet with his approval.
On May 9, 1962, Rozek’s petition was presented to the Hon. William E. Buck, one of the three judges of the District Court of the Eighth Judicial District of the State of Colorado, at Boulder, Colorado. The petition was presented ex parte and on presentation Judge Buck entered an order directing that “testimony be taken May 28, 1962, at 2:00 P.M., June 11, 1962, at 2:00 P.M. and July 3, 1962, at 9:00 A.M. before Judge William E. Buck.”
On May 11, 1962, Judge Buck entered a further ex parte order fixing the times and places when and where Rozek would be “allowed to examine the persons named in the petition,” and directing that the clerk of the court issue notices and cause the same to be served upon the witnesses, as provided by Rule 27, supra, said order providing that:
“* * * but in lieu of setting forth verbatim in said notice a brief outline of the facts expected to be proved that there be attached to and made a part of said notice a copy of the petition filed herein and a copy of this order.”
Pursuant to this order notices were issued and served on the nine persons named in the petition.
On May 24, 1962, “the witnesses” appeared specially and filed their motion to dismiss, to vacate the orders of May 9th and 11th, 1962, to quash the notices to appear and to dismiss Rozek’s petition.
In support of their motion they urge that:
1. The petition fails to set forth grounds for taking and *604 perpetuating their testimony, the petition being defective in that:
(a) The testimony is not needed to commence an action for libel or to serve the ends of justice;
(b) The ordinary procedures for taking of depositions after suit filed afford Rozek an adequate remedy;
(c) The petition fails to set forth what facts Rozek expects to prove by the witnesses or the relevancy of such facts as to any contemplated litigation by Rozek.
(d) The petition does not state that the witnesses are expected to be adverse parties.
2. The petition, except for the allegation of libel, does not even mention any other justiciable cause, but refers to matters of administration of the University.
3. The petition does not fix, define or limit the issues on which testimony is sought to be taken.
4. The court has no jurisdiction over the witnesses, for the reason that the orders are ex parte and void.
On May 28, 1962, the “expected adverse parties” appeared specially and sought the same relief as “the witnesses” and for substantially the same reasons.
On May 28, 1962, over the objections of Rozek, the foregoing motions were heard before the Hon. Dale E. Shannon, one of the three judges of the District Court of the Eighth Judicial District of the State of Colorado. Judge Shannon sustained the motions and entered an order dismissing Rozek’s petition, quashing the orders to appear and set aside the previous order fixing dates for appearance.
Rozek is here by writ of error seeking reversal. He assigns as reasons therefor that:
FIRST: “IT WAS ERROR AND WITHOUT THE JURISDICTION OF JUDGE SHANNON TO VACATE ORDERS ENTERED BY JUDGE BUCK.”
SECOND: “IT WAS MANIFEST ERROR TO REFUSE PERPETUATION OF TESTIMONY AND TO GRANT RESPONDENTS’ SEVERAL MOTIONS.”
In view of the position that we take with reference to *605 the second assigned error, we find it unnecessary to pass on the first.
From the record before us it appears that Rozek claims to have been libeled by one or more of the three prospective “adverse parties” and that “the witnesses” and “numerous parties to the petitioner [Rozek] unknown at this time, have conspired and connived with the named individuals, and are expected to be adverse parties in the event a complaint is filed.” (Emphasis supplied.)
Rozek seeks to perpetuate the testimony of these nine named witnesses — and others not named., who it may later be discovered have material information that should be perpetuated.
Clearly Rozek is entitled to seek judicial redress for the alleged wrong inflicted upon him — the libel — and that would include use of all procedural devices provided to attain his ultimate goal, including the right to take depositions de bene esse as provided by Rule 26, or in perpetuam memoriam as provided by Rule 27, conditioned on his proceeding in good faith to avail himself of the privileges of the rules.
As to his second purpose of reshaping and improving the university, he does not propose to seek judicial redress, his problem is not legal, but rather a political problem, and he seeks to use the judicial process and the courtrooms as a forum to express his political views.
From Rozek’s petition and argument of his counsel, it is glaringly apparent that the alleged libel is per se of minor importance, it is only a stepping stone to greater achievements. His counsel state:
“* * * We do not seek to discover the facts. They 'are apparent and outrageous. We do seek to preserve them.”
It would seem that Rozek could have commenced a libel suit with much less effort than he commenced these proceedings. Had he commenced such a suit he could have immediately, after jurisdiction had been obtained over the defendants, taken the depositions of “any per *606 son” and in effect perpetuated their testimony. We do not hold that depositions may not be taken before suit, but in a situation such as we have here failure to file the “expected” action, coupled with the statement “in the event a complaint is filed” prompts one to question whether this is a good faith effort on the part of Rozek to perpetuate testimony pertaining to a contemplated libel suit.
We find that Rozek’s petition fails to comply with the rule in a most material matter. The rule provides that the petition shall state “* * * that the petitioner expects to be a party to an action * * Rozek used these very words in his petition; however, he modified and qualified his positive statement by stating in the same paragraph that other individuals “are expected to be adverse parties in the event a complaint is filed ”
One becomes a party plaintiff to an action in court: “(1) by filing a complaint with the court, or (2) by the service of a summons.” R.C.P. Colo., Rule 3.
When we consider the positive statement that Rozek “expects to be a party” followed by the statement that others will be named as adverse parties “in the event a complaint is filed” in the light of the provisions of Rule 3, we do not find such a direct and positive statement by Rozek as to constitute strict compliance with the requirements of Rule 27.
In 26A C.J.S. 290, Depositions, § 4(b), it is pointed out that one seeking to take depositions must comply with the authorizing statute:
“Statutory provisions for taking of depositions are generally considered in derogation of the common law, and, although they are to be liberally construed, such statutes must be strictly or substantially complied with.”
One reading Rozek’s petition must entertain grave doubts as to whether Rozek contemplates the filing of a libel suit and, if he does so intend, whether he really wants to take testimony relative to possible issues of fact *607 that might have to be resolved in such a suit, or whether his fast and loose language about intending “to be a party to an action” “in the event a complaint is filed” is just a smoke screen to conceal his real purpose of using the judicial process and the courtroom, with their attendant sheltering immunities, for publicly trying certain named and other unnamed persons with whom he has divergent views as to proper thinking or proper action.
It would seem axiomatic that one seeking to invoke the aid of the judiciary should proceed in good faith to attain that relief to which he claims to be entitled— in this case, taking and preserving testimony with reference to a proposed libel suit. One may not in bad faith invoke the aid of the court to attain injustice.
Counsel for Rozek painstakingly saw to it that his arguments resisting the motions to dismiss were fully recorded and, in designating the record, saw to it that this court should have the benefit of reading the arguments of Rozek, a substantial portion of which consist of unbridled diatribe, castegating individuals cited to appear to give testimony, testimony to be perpetuated. Clearly such could not be in furtherance of proper use of the judicial process or to the end that truth be found. Here and in the trial court counsel has expressed his political views, views that are irrelevant to any pending judicial problem, views that have nothing to do with Rozek’s individual rights or duties that might be the subject of “expected” litigation.
Rules of procedure, including Rule 27, are designed to help in properly adjudicating judicial problems presented to or to be presented to the judiciary. Counsel for Rozek take the position that Rule 27 grants absolute rights, the right to inquire in good faith or bad faith into matters that are not in litigation or contemplated litigation and about matters other than those specified in the rule.
Counsel in their brief state: .
“* * * ruje j-271 gives the right, and there is no ar *608 gument admissible that the right is lost because action could be brought and a different course pursued.”
“* * * the matter of the taking of a deposition to perpetuate testimony is an absolute matter of right and not of discretion. * * *.”
“* * * Essentially, preservation of testimony and its perpetuation are an absolute right of any person, with reference to any other person, under the Rules * * *.”
“Absolute rights,” if such there be, are not commonplace and certainly not such as those granted by Rule 27, which conditions exercise of the right on many expressed factors: going to court, paying a docket fee, preparing, verifying and filing a petition containing certain material, notifying others, and the implied condition that one who seeks justice shall proceed in good faith in efforts to attain his goal.
Rights do not exist in a vacuum — they bear some relation to people, things, reality- — usually qualified, conditional, coupled with duties and obligations.
Here Rozek contemplates a libel suit; he knows exactly how, when and by whom he was libeled. In his brief he states:
“* * * -We do not seek to discover the facts. They are apparent and outrageous. We do seek to preserve them. * * *.”
Is Rozek seeking to perpetuate the facts about the libel? He states that:
“* * * a brief outline of the facts expected to be proved by said witnesses, are as follows:
[From Ronald M. Brown]
“That he is the Director of Financial Aid; that he has knowledge as to the number and extent of the scholarships granted to John Farrell [one to be sued].”
We fail to see how evidence of the number or size of scholarships received by John Farrell from the University of Colorado could be admissible or have any" bear *609 ing on the outcome of a libel suit between Rozek and Farrell. This desired testimony does not refer to the controversy between Rozek and Farrell, but to the management and functioning of the University.
He seeks to take the testimony of Tippo, Provost of the University,
“* * * who * * * has knowledge and information concerning the alleged conspiracy which is relevant and material.”
Relevant and material to what? Not to any libel suit.
He seeks to take and perpetuate the testimony of Quigg Newton and elicit testimony:
“That he is the President of the University of Colorado; that as such he is responsible for administering the policies, rules and regulations of the University and the constitution and laws of the State of Colorado, to the end that they are fairly and uniformly applied, and that academic freedom exists in fact; and he has knowledge and information relating to the concerted action which is material and pertinent to this inquiry.”
The foregoing are fair examples of testimony sought which counsel would have us believe is material and relevant to a contemplated libel action where the false statements are libelous per se.
We are not persuaded as to counsel’s avowed purpose, but from the record before us are convinced that counsel is not proceeding in good faith to take advantage of the rights granted by the rule, but rather that the “expected” libel suit (in the event a complaint is filed) is proposed only as a guise to embark upon a fishing expedition on matters wholly unrelated to the libel and to conduct an inquisition designed to help resolve a political question in a manner acceptable to Rozek.
Under the common law depositions could not be taken in cases to be filed, pending, or at all.
26A C.J.S. 289, Depositions, § 3:
“At common law, in actions at law, it was deemed the right of the parties to have witnesses produced and ex *610 amined viva voce, and the right to take depositions was unknown; and litigants therefore were obliged to resort to chancery, or to procure the consent of the adverse party, which the court could compel by deferring the trial or by refusing to render judgment. Subsequently statutes were enacted empowering common-law courts to authorize the taking of depositions.
“The court of chancery from an early day exercised the power to procure testimony by deposition, the rule being universal to try all equity causes on depositions. Such power to procure testimony by means of depositions is inherent in courts of equity, and was borrowed from the civil law. * *
From territorial days on, and now, we have had statutory or rule authority for taking of depositions de bene esse or in perpetuara memoriam. Present authority for perpetuating testimony supplants the ancient chancery equitable procedures; inherent in the use thereof is the element of good faith, seeking justice.
In Cailleaud v. Superior Court, 108 Cal. App. 752, 292 Pac. 145, the petitioner sought to perpetuate testimony. There the court said:
“The application upon which the proceedings were initiated alleges that the applicants are husband and wife, that the husband has executed a will in which he has devised property of considerable value to his son, August Cailleaud, and to his two grandsons, and property of little value to his son, Henry Cailleaud, Jr., the petitioner herein. It is then alleged that the son Henry has expressed displeasure over such disposition of the property and that applicants believe he will at some future date institute a contest or other action for the recovery of a larger portion of the property of applicants.
“In so far as the application relates to an anticipated will contest, it is sham. The testator would not be a party to a contest of his own will and the applicants show by their petition that the testator’s wife would not be an interested party. * * ■
*611 In Petition of Central Vermont Public Service Corporation, 115 Vt. 204, 55 A. (2d) 201, the Supreme Court entered an order prohibiting the trial court from perpetuating testimony. The Vermont statute authorizing depositions and perpetuating of testimony is in all material respects comparable to our Rule 27. There the court said:
“The' parties hereto agree that P. L. 1737, being in derogation of the common law, is to be strictly construed. This is the holding in Clark’s Adm’r v. Wilmington Savings Bank, 89 Vt. 6, 8, 93 A. 265.
“In State ex rel. Phillips v. Elliott, 75 Minn. 391, 77 N. W. 952, 954, a statute substantially identical with ours was said to be undoubtedly intended to take the place of the equitable bill in memoriam sui perpetuam, the origin of which ‘has been traced to canon law, which, taking hold of men’s consciences, extended its right to all cases in which it was important, in the interest of justice, to register testimony which would otherwise be lost,’ the object being to preserve evidence, to assist courts, and prevent future litigation, and especially to secure and preserve such testimony as might be in danger of being lost before the matter to which it related could be made the subject of investigation. Therefore in such a proceeding a court of equity will not entertain the bill if it is possible that the matter in controversy can be made the subject of immediate judicial investigation by the party who seeks to perpetuate the testimony (Crawford v. McAdams, 63 N.C. 67, 68) and it must appear that the testimony may be lost by delay. * * *.”
In State v. District Court, 114 Mont. 128, 133 P. (2d) 350, petitioner sought to perpetuate testimony pertinent to an “expected” action to recover for work, labor and services rendered. The Montana code provisions for perpetuating testimony prior to the filing of an action are m'substance the same as our Rule 27. An order of the trial court granting authority to perpetuate the testi *612 mony was, on review by the Supreme Court, annulled. Among other things, the Supreme Court said:
“ * * * The result of the examination proposed will be nothing of value to the applicant upon the trial. While we are not necessarily concerned with the result of the examination, it is proper that it be considered in determining the purpose and the good faith of the applicant in seeking to have the examination made. If it is clear that the aim sought to be accomplished is not obtainable in the proceeding proposed, then it would appear that the applicant is not acting in good faith and that the purpose is something other than that for which the procedure employed is intended.”
In State v. District Court, 120 Mont. 585, 189 P. (2d) 998, the court said:
“The proceedings in the district court were instituted under sections 10686-10692, Revised Codes of Montana 1935.
“These statutes are for the perpetuation of testimony but they are not discovery statutes.
“The application must be made in good faith for the purpose of obtaining, preserving and using material testimony (Irving v. Superior Court, 79 Cal. App. 361, 249 P. 236) and a sham application must be denied. Cailleaud v. Superior Court, 108 Cal. App. 752, 292 P. 145.”
Though statutory or Rule authority for perpetuating testimony has since territorial days continuously been available in Colorado, this court has not previously been called upon to determine any questions arising by virtue of such authority in civil cases. However, in Kelly v. People, 121 Colo. 243, 215 P. (2d) 336, we quoted the following language:
“ ‘The taking of a deposition will not be permitted where it is evident that applicant is not proceeding in good faith, as where the application is a fishing expedition to discover in advance of the trial what the- witness will testify to, * * * 26 C.J.S., p. 884, § 37.”
*613 To the same effect is State v. District Court, 128 Mont. 445, 277 P. (2d) 536.
See, also, Hall v. Merchants & Farmers Bank, 227 Miss. 100, 85 S. (2d) 788.
We hold that Rozek has failed to comply with the provisions of Rule 27, in that he has not stated in unequivocal language that “he expects to be a party to an action,” that he is not proceeding in good faith to avail himself of the privileges granted by the rule, and for these reasons the judgment is affirmed.
Mr. Chief Justice Frantz concurs in the result.